POTTER *v.* GOLDEN RULE GROCERY CO. *et al.*

(*Jackson,* April Term, 1935.)

Opinion filed July 15, 1935.

T. A. DODSON, of Kingsport, for plaintiffs in error.

· WORLEY, HAUK & MINTER, of Kingsport, and JOHN F. BLEVINS, of Blountville, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

Plaintiff's intestate, Merritt W. Potter, Jr., received injuries when struck by a truck belonging to defendant Golden Rule Grocery Company, from which he died a few hours thereafter. At the conclusion of the evidence, the trial court sustained the motion of the grocery company for a directed verdict without specifically stating any reasons therefor. From his remark at the time, the Court of Appeals concluded that he granted the motion upon the theory that the evidence preponderated in favor of defendants which, if true, was error. The Court of Appeals held that there was sufficient evidence to take the case to the jury, and reversed the trial court and remanded the case for a new trial.

The accident occurred about 4 P. M. on Yadkin street in the town of Kingsport. This is a cinder street running east and west and is 24 feet in width. On the north side there is a park, in which boys play football. This park is covered with a grass sod, which extends to. Yadkin street, and is level with the street. There is no sidewalk on the south side. The street is wide enough for three cars to pass. At the time of the accident, two or three cars were parked on the south side of the street, opposite where Potter and his companions were playing a matched game of football. Potter's team was facing east and the opposite team west. Potter had the ball and was attempting to make a run around the south end, and was forced to the edge of the park, where he was downed by Hart of the opposing team. The truck was traveling east on the extreme north side of the street and was within 8 feet of Potter when he was downed. The truck struck Hart and ran over the body of Potter. Potter was running in the same general direction that the truck was traveling, with his back to it. The truck was being

driven by a thirteen year old boy, but the regular driver was sitting beside him. There was nothing to obstruct their view or to prevent them from seeing these boys as they ran to the edge of the park. Neither of the occupants of the truck testified. Under these facts we concur with the Court of Appeals in holding that the case should have been submitted to the jury.

Upon the authority of *Townsley* v. *Yellow Cab Co.*, 145 Tenn., 91, 237 S. W., 58, wherein the duty and care to be exercised with respect to children who are playing in or near a street is fully discussed, we likewise concur with the Court of Appeals in holding that the question of contributory negligence is one for the jury to decide. While deceased was an intelligent boy, sixteen years of age, he was engaged in play, could see that no car was approaching from the east on the north side of the street, and had no warning or reason to expect that a car was approaching from the west on that side of the street. With respect to the term "child or children," the following statement appears in 11 C. J., 756:

"The term has a second well understood meaning, irrespective of parentage, and may denote persons under the age of twenty-one years, as distinguished from adults, and it is used in this sense in the law of negligence, and in laws for the protection of children," etc.

Finally, it is said that the Court of Appeals committed error in holding that the grocery company was liable for this accident in any event. The facts are that Walter B. Morley and Claude C. Morley operated a grocery store under the trade-name of Golden Rule Grocery Company. It owned the Chevrolet truck that killed plaintiff's intestate. It was being used in the delivery of groceries at

the time of the accident. The truck was in charge of Mack Free, who was instructed not to permit any person to ride upon or drive it. On this trip, and before the accident, Free had permitted Harold Morley, the thirteen year old son of Walter C. Morley, to enter the truck and drive it, and Harold was driving when the accident occurred. Free was seated beside Harold. It is said that this state of facts presents a question not heretofore determined by this court. In holding the partnership liable, the Court of Appeals adopted the rule in Blashfield's Cyclopedia of Automobile Law, Vol. 2, pp. 1329, 1330, as follows:

"Thus, even though the assistant is employed without authority, express or implied, the owner may be liable for his negligent acts, if done in the presence of the driver and by his direction or with his acquiescence. In such case the negligent act of the assistant is to be considered the act of the servant."

In the notes several cases are cited which support the text. These decisions are based upon the old English case of *Booth* v. *Mister*, 32 Eng. C. L., 439, in which the servant of defendant, who had been placed in charge of his cart, intrusted its driving to a stranger, resulting in an accident. It was insisted that the defendant was not liable because the plaintiff had alleged that the cart was driven by the defendant's servant. Lord Abinger, in his opinion, said: "as the defendant's servant Usher was in the cart, I think that the reins being held by another man makes no difference. It was the same as if the servant had held them himself." On the other hand, in *Houghton* v. *Pilkington* [1912], 3 K. B., 308, it appeared that plaintiff, at the invitation of defendant's servant, got into a cart belonging to defendant for the purpose of render-

ing assistance to another servant of defendant who had been injured. The servant then negligently caused the horse to start, and plaintiff was thrown out and injured. It was held that the servant had no implied authority, as the result of the emergency which had occurred, to invite plaintiff into the cart, and that defendant was not liable.

The general rule, supported by numerous cases, is thus stated in 39 C. J., 1272:

"Where there is neither express nor implied authority given a servant to employ another to perform or to assist him in the performance of his work, or a subsequent ratification by his employer of such employment, the relation of master and servant between the employer and one so employed by his servant does not exist and he is not liable for the negligent acts of the latter under the doctrine of *respondeat superior*."

The reason underlying the rule is thus stated by the Supreme Court of Minnesota in *Haluptzok* v. *Great Northern Ry.*, 55 Minn., 446, 57 N. W., 144, 145, 26 L. R. A., 739:

"Under the doctrine of *respondeat superior*, a master, however careful in the selection of his servants, is responsible to strangers for their negligence committed in the course of their employment. The doctrine is at best somewhat severe, and, if a man is to be held liable for the acts of his servants, he certainly should have the exclusive right to determine who they shall be. Hence, we think, in every well-considered case where a person has been held liable, under the doctrine referred to, for the negligence of another, that other was engaged in his service either by the defendant personally, or by others by his authority, express or implied."

With the authorities in hopeless confusion upon

this question, the American Law Institute adopted an intermediate rule in its Restatement of the Law of Agency, Vol. 1, sec. 241, as follows:

"A master who has entrusted a servant with an instrumentality is subject to liability for harm caused by its negligent management by one to whom the servant entrusts its custody to serve the purposes of the master, if the servant should realize that there is an undue risk that such person will harm others by its management."

In explanation of the text, the Institute has added the following pertinent comments:

"c. Liability only where transfer is negligent. Under the rule stated in this Section, in the absence of authority in the servant to delegate to another control over the instrumentality, the master is liable only if the servant, at the time he surrenders custody, has reason to believe that the change of custody is likely to result in harm to others. Such likelihood may exist because of the known incompetence or recklessness of the person to whom custody is given or, in the case of an instrumentality likely to do harm if not carefully managed, because the servant does not know of the qualities of such person. Likewise, it may be negligent to surrender custody to one likely to abandon the instrumentality in a dangerous situation or to surrender its custody to an incompetent person. . . .

"e. Where the servant remains in control. A servant, while remaining with the instrumentality, may surrender its immediate control to another, as where the driver of a truck permits a boy to drive it. Although such surrender is not negligent, the master remains subject to liability for any negligence of the employee in supervising the conduct of the other. However, in the absence of negligence by his servant, the master is not liable for any

casual negligence of the other while under the supervision of the servant.

"f. Harm to transferee. If the person to whom the servant entrusts the instrumentality is incompetent because of his age or lack of experience and is hurt without fault owing to such age or inexperience, the master is not subject to liability for the conduct of the servant in endangering such person by giving him possession, except where the servant is authorized or apparently authorized so to give possession"

 This rule appears to us to be sound and just, and we approve it. In its final analysis it fastens liability on the master where his servant is negligent, otherwise there is no liability. If the servant, without authority, intrusts the instrumentality to one whom, on account of his age, inexperience, or recklessness, he has reason to believe is likely to harm others, the master would be liable. Such liability would result where the party was known to the servant to be intoxicated or insane. On the contrary, where the servant intrusts the instrumentality to one whom he knows to be reliable and experienced, there would be no liability. So that, in the instant case, should the jury find that young Potter's death was due to the negligent operation of the truck, that Potter was not guilty of contributory negligence, and that Free was guilty of negligence in permitting young Morley to drive the truck, then the grocery company would be liable. Or if the jury should find that Free was not guilty of negligence in permitting young Morley to drive the truck, but that Free was supervising his conduct, and in so doing was guilty of negligence, then in that event the grocery company would be liable.

The Court of Appeals reached the right result, and hence the writ will be denied.