TENNESSEE COACH CO. *v.* REECE.

*(Knoxville,* September Term, 1941.)

Opinion filed November 29, 1941.

Donaldson, Montgomery & Baugh, of Knoxville, and A. T. Drinnon, of Morristown, for plaintiff in error.

Thomas H. Rogan, of Rogersville, and Susong, Parvin & Fraker, of Greeneville, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

In this case plaintiff Reece sued defendant Tennessee Coach Company for damages for personal injuries sustained by Reece while working on a bus belonging to the defendant. The accident in which Reece suffered the injuries was alleged to have been occasioned by the negligence of an employee of defendant. There was a judgment in favor of plaintiff below, which was affirmed by the Court of Appeals, and this court granted defendant's petition for *certiorari*.

The defendant operates a line of busses and while one of these vehicles, loaded with passengers en route from Knoxville to Bristol, was passing through Rogersville it became disabled. Francis, the driver of the bus, was unable to make the necessary repairs and went to the City Garage in Rogersville to obtain a mechanic. The plaintiff, a mechanic employed at the City Garage, was sent down to work on the bus.

Plaintiff went to the bus, investigated the trouble, and began his work. There was engine trouble described in the record. After certain details were attended to plaintiff Reece undertook to try out the engine. He would prime the carburetor with a small amount of gasoline and have the starter pressed to see if the engine would run. There was danger of backfire from the primed carburetor during this process, and after priming the carburetor Reece would step back a few feet before giving directions for pressing the starter. The starter was pressed several times after the priming and, while the engine started, it shortly stopped. Reece thereupon primed the carburetor another time. Before he had stepped back and given directions so to do, the man at

the starter pressed it, there was a backfire from the car-
buretor, and a flame burst out by which Reese was very
severely burned.

When the bus was stopped at Rogersville the driver
put in a long distance call to the Company's Knoxville
office to explain the delay. He returned to the bus before
getting an answer. This driver, Francis, was himself at
the starter when the first tests above described were
made. During the process he was called to the telephone,
the Knoxville connection having been made. Francis
left the bus and directed a by-stander named Wilson to
work the starter for plaintiff Reece, Francis showing
Wilson where the starter was located. The starter used
seems to have been an additional starter located toward
the rear of the bus.

Wilson testified that he pressed the starter twice at the
direction of the plaintiff, after plaintiff had stepped back.
Wilson said that when he pressed the starter the third
time, he saw Reece stepping back and thought Reece was
ready. Wilson could not recall that Reece gave him any
direction to press the starter when that was done the
third time—the time the engine backfired and Reece was
burned. Reece said he did not direct the pressing of the
starter at that time.

This starter, as stated above, seemed to be located on
the side of the bus toward the rear. As we understand
the record, Reece was working in the rear of the bus. A
few feet separated Reece from the man working the
starter but the vision between the two men was somewhat
obscured by the contour of the vehicle.

From the foregoing statement of the facts, indeed
from Wilson's own testimony, it is rather obvious that
Wilson was guilty of negligence in pressing this starter
before ascertaining that Reece was out of danger and

before having a request from Reece so to manipulate the appliance. The principal question in the case is whether the defendant Coach Company is responsible for the negligence of Wilson under the circumstances detailed.

Counsel for the defendant deny that the driver Francis, had any authority to procure the services of Wilson to act for the defendant in this matter. This may be granted, however, without relieving defendant of liability.

The case of *Potter* v. *Golden Rule Grocery Co.*, 169 Tenn., 240, 84 S. W. (2d), 364, 366, is quite similar to the case before us. In the Potter case the driver of an automobile, with no authority so to do from his master, entrusted the operation of a machine to a young, inexperienced boy. The master was held liable for an accident occurring while this boy was running the vehicle. It was held that the driver's act in turning over the car to the young boy was an act of negligence performed in the discharge of his duties for the consequence of which negligent act the master was responsible. Abundant authority was cited by the court in the Potter case to support its conclusion, including Restatement of the Law of Agency, Vol. 1, section 241. It was said by this court, among other things, "If the servant, without authority, intrusts the instrumentality to one whom, on account of his age, inexperience, or recklessness, he has reason to believe is likely to harm others, the master would be liable."

In the Restatement of the Law of Agency, Vol. 1, section 241, it is said that such liability of the master may exist not only when the person to whom the instrumentality is entrusted is known to be incompetent or reckless, but, in the case of an instrumentality likely to do harm if not carefully managed, the master would be

liable when the servant entrusts the instrumentality to a person whose qualifications the servant does not know. This, we think, is true.

In the case before us, Francis, the driver of the bus, had but slight acquaintance with Wilson, and it is evident from the testimony of Wilson that he knew nothing about the construction of the bus and its machinery and did not appreciate the dangers incident to the operation in which he was called on to assist.

In the Restatement of the Law of Agency it is further said in the section above cited:

■ "A servant, while remaining with the instrumentality, may surrender its immediate control to another, as where the driver of a truck permits a boy to drive it. Although such surrender is not negligent, the master remains subject to liability for any negligence of the employee in supervising the conduct of the other. However, in the absence of negligence by his servant, the master is not liable for any casual negligence of the other while under the supervision of the servant."

Although there is conflict in the evidence, according to the testimony of the driver, Francis, he had returned to the bus from answering his telephone call at the time Wilson pressed the starter which caused the backfire. Francis said that he was standing within three feet of Reece at the moment and Reece and Wilson were close together. So there is evidence that Francis was present to supervise when the accident occurred.

The present case is not different from that of *Elkin Motor Co.* v. *Ragland*, 6 Tenn. App., 166, in which an accident occurred after the driver of a truck entrusted its operation to his wife who "wasn't very well experienced in driving" and "had not been driving very much by her-

self." Judge FAW reviewed the authorities, and among other things said:

"But the master has been held liable for damage caused by his vehicle in a line of cases where the servant, employed as the driver of a horse-drawn carriage or of an automobile, directed or permitted a stranger to drive, but remained on the seat beside such stranger while the latter was driving. This holding rests upon the theory that 'when such acts are done in the presence of the servant, the actor is considered the alter ego of the servant, his acts are the acts of the servant, and therefore the master is liable for such acts' (44 A. L. R., p. 1385).; or, as elsewhere expressed, 'this holding is based upon the reasoning that the stranger is a mere instrumentality by which the servant or agent performs his duties, a longer arm which the servant or agent wields or controls; that the master's business is being performed, therefore, by the agent or servant through the stranger in question.' ([*Uhlman* v. *Lindeman,* 44 N. D., 36, 176 N. W., 25], (10 A. L. R., p. 1442)."

A similar case by the Court of Appeals was that of *Greer* v. *McKee,* 13 Tenn. App., 625. Petitions for *certiorari* were denied by this court in both these cases. In both cases the driver of the truck was seated by the person to whose control the vehicle had been entrusted.

We do not see that the negligence of Wilson in this case could be regarded as any more *casual,* such as to relieve the master of liability, than was the negligence of the drivers of rapidly moving vehicles considered in the two decisions of the Court of Appeals.

*Elkin Motor Co.* v. *Ragland* directly supports the judgment for the plaintiff in this case. All that appears in that case as to the lack of qualification of the driver's wife was that she was inexperienced. Certainly Wilson

had no experience in such operation as he was called on to perform by the driver of the bus in this case.

The foregoing discussion of the law is by way of testing defendant's motion for a directed verdict. The views indicated make it unnecessary to consider the criticisms of the trial judge's charge which was in line with what we have just said.

■ It is further insisted on behalf of the defendant that the declaration herein does not justify a recovery on the theory that the driver of the bus entrusted the handling of this starting instrumentality to an incompetent or inexperienced person. This seems too critical.

In the second count of the declaration it was averred that the driver, if not authorized to place Wilson in charge, "acted negligently and carelessly in so doing and defendant company is liable for his negligence in that respect." This statement is general but no exception, by demurrer or otherwise, was taken to the sufficiency of the declaration. A plea of the general issue was interposed and it was not suggested in the trial that the proof offered by plaintiff was beyond the scope of the declaration.

■ It is further urged that Reece occupied the status of a loaned servant. That Wilson was his fellow servant and the defendant accordingly not liable for Wilson's negligence.

We think Reece was not a loaned servant. His testimony as well as the testimony of the bus driver shows that the arrangement for Reece's services was made with the City Garage, Reece's employer; that the transaction of the bus driver was with a man in the office, and that Reece's orders to do the work came from a man in the office of the City Garage. In other words, the City

Garage was employed to do this work on the bus. It was the job of that concern.

We discussed the doctrine of loaned servants at some length and reviewed our decisions in *Owen* v. *St. Louis Spring Co.*, 175 Tenn., 543, 136 S. W. (2d), 498, 499. We said in that case: "A test running through our cases, although not always in terms noted, is indicated by the question 'In whose work was the employee engaged at the time?' " The authorities herein relied on by defendant were distinguished.

We think Reece was engaged in the work of the City Garage at the time he was hurt. The City Garage was procured by the bus driver to do this work on the bus and the City Garage put its employee Reece on the job. Nothing in the record indicates that the bus driver reserved any right to direct Reece's methods or manner of work on the job.

There is no contention here that the Coach Company relinquished control of the bus driver or of Wilson and that either became a servant loaned to the City Garage. The theory of the Coach Company is just the opposite— that the mechanic Reece, a servant of the City Garage, was loaned to the Coach Company.

It is also assigned for error that the judgment herein is excessive. The jury returned a verdict of $8,000. The trial judge suggested a *remittitur* of $3,000 and entered judgment for $5,000, which judgment was affirmed by the Court of Appeals. As we have often said, the concurrence of the trial court and the Court of Appeals as to the amount of a judgment in a personal injury case is treated as conclusive in this court unless some exceptional circumstances appear. We find no such exceptional circumstances here. The plaintiff was very severely injured.

The judgment of the Court of Appeals is affirmed.