## BOLES v. RUSSELL et al.—252 S. W. (2d) 801.

Eastern Section.   July 16, 1952.

Petition for Certiorari denied by Supreme Court, October 10, 1952.

F. H. Parvin and B. B. Fraker, both of Greeneville, Robert May, of Jonesboro, for plaintiff in error.

Maupin, Berry & Coleman, of Greeneville, for defendants in error.

McAMIS, J.  W. T. Boles, Administrator of the estate of his brother, Blaine Boles, sued Fox Russell and H. G. Russell for the death of the intestate December 24, 1950. A jury rejected plaintiff's insistence that the "family purpose doctrine" applies as against the father, H. G. Russell, and returned a verdict in his favor.  A verdict for $15,000 was returned against the son, Fox Russell, who has not appealed.  The Administrator filed a motion for a new trial as to the father which was overruled resulting in this appeal.  The assignments make the single insistence that the undisputed evidence shows that the defendant, H. G. Russell, was the owner of the automobile which collided with the truck of the deceased causing his death and that it was maintained by the father for the benefit of his family including his son, Fox Russell.

The proof is sufficient to make out a case of negligent operation of the Russell car and, as indicated by the verdict of the jury against the son, the jury found for the plaintiff on the issue of negligence. No question is made as to the admission or exclusion of evidence or as to the charge of the court, the sole question being whether, as insisted, the undisputed evidence makes out a case for the application of the "family purpose doctrine".

■ At the date of Mr. Boles' death, Fox Russell was 29 years of age and unmarried. Prior to about June, 1950, he had, for some time, resided in a Western State. Apparently, he was somewhat irresponsible, but there is no proof that he was an incompetent driver or, if so, that his father knew of it. From June to December, 1950, Fox Russell lived with his father, the defendant H. G. Russell, as a member of his household. He worked a part of the time on the father's farm and part time for Greene County.

In October, 1950, he attempted to buy the car, later involved in the collision, from John Crum. The son and Mr. Crum agreed upon a price of $675 which was to be financed through the Security Loan Company of Greeneville. Fox Russell, during the negotiations with Crum, requested H. G. Russell to advise him as to the value of the car and, on passing the Crum residence, the father stopped and looked at the car. Apparently, he passed favorably upon the trade. The elder Russell would have had no further connection with the purchase of the car except for the refusal of the Security Company to finance cars for unmarried men of draft age.

When it developed that the son could not finance the car for the reason stated, H. G. Russell was called in and agreed to execute the necessary note and title retained contract or chattel mortgage. The title papers

were recorded in the office of the Register of Deeds for Greene County and H. G. Russell made application to the County Court Clerk for a license for the car. The registration of the car stood in the name of H. G. Russell continuously until the date of the collision. A collision policy was also issued at the instance of the finance company in the name of H. G. Russell and, after the collision, H. G. Russell filed a claim under the policy and collected the amount of the damage. We assume, since the policy was required by the finance company, that the collision insurance was applied to its claim.

The court charged the jury that in event a verdict should be rendered against the defendant Fox Russell, and the jury should further find by a preponderance of the evidence that the father, H. G. Russell, was the owner of the car involved in the collision and that it was being used as a family car at the time of the collision by Fox Russell as a member of the family of H. G. Russell, a verdict might also be rendered against the defendant H. G. Russell on the theory that in driving the car on the occasion in question Fox Russell was "carrying out the purpose for which the car was bought by the owner". The charge, as given, clearly propounded to the jury the question of the ownership of the car and whether or not it was being maintained by the father for the use and benefit of his family, including his son Fox Russell. We think there is substantial, material evidence to sustain the verdict of the jury under recognized principles governing the application of the "family purpose doctrine".

Plaintiff's insistence that the "family purpose doctrine" is to be applied or not in a given case depending solely on whether the person sued owned the offending vehicle overlooks the underlying principles of the

doctrine. Every case which has come to our attention holds that liability must be predicated solely on the theory of respondeat superior, i. e., that the car was being maintained by a member of the family for family use and that, at the time of the injury, it was being operated by a member of the family in furtherance of that purpose, thus making the operator the agent of the person maintaining the car.

That ownership in and of itself is not controlling was clearly implied in Scates v. Sandefer, 163 Tenn. 558, 44 S. W. (2d) 310, 311. In that case the father who was sued under the "family purpose doctrine" owned the car and maintained it for the benefit of his family including a son who was driving the car when plaintiff was injured. On appeal a judgment in favor of the plaintiff was reversed and the suit against the father dismissed on proof that the father had agreed with the son's employer to allow the son to use the car in connection with the son's duties as an employee and it was being so used at the time the plaintiff was injured. The court said:

"In the cases under consideration the automobile was purchased by the father for the pleasure of his family, but was not being operated for the pleasure of the family when the accident occurred. It was not being operated in the business of the father nor for the pleasure and comfort of himself or family, but solely in behalf of the feed company, and in strict compliance with the contract made between the parties. * * The mere fact that the relationship of the parties is that of father and son does not impose liability upon the former. That the son was a minor is not controlling, since the 'family purpose doctrine' applies to an adult as well as to a minor.

But the true test is: Was the son engaged in the father's business at the time of the accident? Under the facts of these cases we hold that he was not.''

In that case ownership and maintenance for the benefit of the family concurred with the necessary family relationship; but agency was held to be lacking because the son was not carrying out the father's purpose when the plaintiff was injured. In this case respondeat superior could not apply because the father neither bought the car for the benefit of the family nor maintained it for that purpose. He merely consented that one member of the family might use his name so that that particular member of the family might provide himself with a car at his own expense. We think the jury could look behind the title in determining the question of the right of control. Suppose the father had sought to take possession of the car from the son. Can it be supposed that the son could not have shown himself to be the beneficial owner? We think not. Liability without personal fault or control or the right of control over the acts of another whose negligence causes an injury is contrary to accepted principles of legal liability.

■ The "family purpose doctrine" cannot apply unless the person upon whom it is sought to impose liability under it owns, maintains, or furnishes the automobile for the benefit of the family, Commonwealth of Kentucky for use of etc. v. Maryland Casualty Co., 112 F. (2d) 352; Mitchell v. Mullen, 45 Ga. App. 285, 164 S. E. 278, 280; McNamara v. Prather, 277 Ky. 754, 127 S. W. (2d) 160; Euster v. Vogel, 227 Ky. 735, 13 S. W. (2d) 1028, or unless such person has or exercises some degree of control over its continued use by the family. Cf. McNamara v. Prather, supra.

It is true the proof shows that H. G. Russell, the father, used the car in question on a few occasions when his own car was not available. This circumstance, as well as the fact that registration remained in the father's name, doubtless received consideration by the jury. In our opinion, however, the circumstances do not establish as a matter of law that the father owned, maintained or could control the use of the car in question.

We find no error and it results that the judgment must be affirmed with costs.

Hale and Howard, JJ., concur.