CLARENCE DRIVER, Plaintiff-in-Error, v. HAPPEL E. SMITH, Defendant-in-Error.

CLARENCE DRIVER, Plaintiff-in-Error, v. MISS GERALDINE SMITH, by Next Friend, Defendant-in-Error.—339 S. W. (2d) 135.

Western Section. December 21, 1959.

Certiorari Denied by Supreme Court September 9, 1960.

Lloyd S. Adams, Jr., Adams & Adams, Humboldt, for plaintiff in error.

James D. Senter, Jr., Humboldt, for defendants in error.

CARNEY, J. The defendant, Clarence Driver, appeals in error from judgments rendered against him in favor of the plaintiff below, Happel E. Smith, in the amount of $1,000 and in favor of Miss Geraldine Smith by next friend in the amount of $5,000.

On the night of August 12, 1957, a Mercury automobile owned by the defendant, Clarence Driver, and being driven by a teen-ager, Bobby Joe Moore, ran into a ditch alongside the Humboldt-Medina blacktop road in Gibson County, Tennessee, a short distance from the city limits of the City of Humboldt. There were four young people, all minors, seated on the front seat and four young people, all minors, on the back seat including the plaintiff, Geraldine Smith, daughter of the plaintiff, Happel E. Smith.

In the front seat next to the driver, Bobby Joe Moore, were seated Miss Gayle Driver, aged 18, a daughter of the defendant, Clarence Driver, Miss Kate Hamilton and a young man, Jerry Barrix. On the back seat along with the plaintiff, Geraldine Smith, were Miss Susan Bennett and two young men, Dwight Hawks and Kenny Dunlap.

On the evening of the collision, Miss Gayle Driver and her guest from Paris, Tennessee, Miss Kate Hamilton, ate supper with the plaintiff, Miss Geraldine Smith. Miss Driver had the family automobile with the permission of her parents. After supper the three girls drove by and picked up the fourth girl, Miss Susan Bennett, and stopped at a restaurant for a soft drink. At the restaurant the four

boys, Bobby Joe Moore, Jerry Barrix, Kenny Dunlap and Dwight Hawks, walked up and accepted an invitation to go riding.

The young people then drove by the Driver home where Miss Gayle Driver obtained permission from her family to ride around for a while longer. They drove out the highway toward Milan, Tennessee, on a blacktop road where they parked the car and danced for about thirty minutes to the car radio.

About 9:30 P.M. the young people decided to return to Humboldt via the Medina-Humboldt blacktop road. Bobby Joe Moore was driving the automobile at the suggestion of Miss Gayle Driver who was setting next to him.

As they proceeded toward Humboldt one or more of the couples in the car were kissing; Miss Gayle Driver made a remark about feeling left out and thereupon she leaned over and she and the driver of the automobile, Bobby Joe Moore, were in the act of kissing when he lost control of the automobile and ran into the ditch on the right hand side, struck a bank and the automobile came to rest headed in the opposite direction from which it had been travelling.

A number of the occupants were injured including the plaintiff, Geraldine Smith. She was severly injured, sustaining a fractured pelvis, a brain concussion and injuries to her right leg. She was hospitalized for many weeks and unable to walk for several more weeks. The jury returned a verdict of $5,000 for her injuries and a verdict of $1,-000 in favor of her father for medical expenses, loss of services, etc. Judgments were entered on these jury verdicts and no question is made on this appeal as to the amount of the judgments.

Plaintiff-in-error, Clarence Driver, has made five assignments of error. Assignments of error Nos. I and II insist that there was no material evidence to support the verdicts of the jury and that His Honor the Trial Judge was in error in overruling the defendant's motion for directed verdicts at the conclusion of all the evidence.

It is the contention of the plaintiff-in-error that while the Family Purpose Doctrine is in force in Tennessee yet in this case the father, Mr. Driver, is not liable for the negligence of Bobby Joe Moore for three reasons:

(1) Miss Gayle Driver did not have general permission to use the automobile but was required to obtain special permission from one of her parents each time she used the automobile.

(2) Miss Driver was not driving the automobile herself at the time of the accident and the negligence of Bobby Joe Moore who was driving at her request was not imputable to her father, Clarence Driver.

(3) Miss Gayle Driver had permission to drive the automobile only within the corporate limits of the City of Humboldt and that act of Miss Gayle Driver and her friends in going outside of the Town of Humboldt constituted a material deviation from her authority and therefore, Mr. Driver is not liable for the injuries sustained by the plaintiffs during this material deviation.

The members of Mr. Driver's household at the time of the accident were his wife and their daughter, Gayle. Mr. Driver testified that he kept the car, among other things, for the use, pleasure and convenience of his family, including Gayle; that he kept one set of keys to the car and his wife, Mrs. Driver, the mother of Gayle, kept the other set;

and that he was glad for Gayle to use the car at any time he or Mrs. Driver was not using the same but that she had to get permission from one or the other each time she used the car.

Mr. Driver further testified that he did not know Bobby Joe Moore and that Moore had no permission to drive the automobile on the night of the accident. However, he did admit that on a few occasions he had permitted other young men to drive his automobile when they were escorting his daughter, Gayle, to some social function.

Mr. Driver testified that Gayle was under standing instructions not to drive the car out of the limits of Humboldt except to the Humboldt Country Club which is about three miles from town. The accident happened about three miles from Humboldt. However, he said occasionally Gayle was permitted to drive to Jackson, Tennessee, and other surrounding towns.

Further, to the best of his recollection Gayle had never been permitted to drive out of town at night and on the night in question she had no permission to go out of town though no mention of that fact was made to her on the evening in question.

Miss Gayle Driver and her mother corroborated Mr. Driver in regard to the restrictions on Gayle's use of the automobile.

Some of plaintiffs' witnesses testified they had driven with Gayle Driver outside the city limits of Humboldt on several occasions and that they had never heard of any restrictions on Gayle's right to drive outside the city limits.

The plaintiff-in-error, Mr. Driver, relies most strongly upon the following statement taken from the opinion of

Judge Anderson in the case of Redding v. Barker, 1950, 33 Tenn. App. 132, 230 S. W. (2d) 202, 205:

"The family purpose doctrine does not apply where the members of the family must obtain special permission on each occasion of the vehicle's use by them; nor does it apply where there is no evidence that the vehicle was maintained wholly or partly to serve the convenience of the family. Woodfin v. Insel, 13 Tenn. App. 493, 495; Long v. Tomlin, 22 Tenn. App. 607, 125 S. W. (2d) 171; 60 C. J.S. Motor Vehicles sec. 434, p. 1075. Cf. Scates v. Sandifer, supra and Adkins v. Nanney, supra."

The above quotation is quoted with approval in the case of Harber v. Smith, 1956, 40 Tenn. App. 648, 292 S. W. (2d) 468.

However, a study of these two cases indicates to us that the language quoted above is broader than the facts of the two cases would justify. In the case of Redding v. Barker, supra, the vehicle involved in the collision was a one and one-half ton truck driven by the 20-year old son of the defendant owner and accompanied by another son of the owner of the truck. The two boys were returning home from Jackson, Tennessee, where they had attended a picture show. The opinion of Judge Anderson discussed the cases involving the Family Purpose Doctrine in Tennessee and then made a finding that the car was not being furnished by the owner for the convenience of his family and hence, the Family Purpose Doctrine did not apply.

From said opinion we quote as follows:

"With us the doctrine is regarded as resting strictly upon the principles of master and servant, or agency,

and liability is imposed on the owner only where it can be done consistently with the principles of respondeat superior. Messer v. Reid, 186 Tenn. 94, 208 S. W. (2d) 528; Long v. Tomlin, 22 Tenn. App. 607, 125 S.W. (2d) 171. The theory is that a member of a family group who furnishes and maintains a vehicle for the pleasure and convenience of the other members of the family, makes its use his affair or business and that in using the vehicle the members of the family are furthering the purpose for which it is maintained by the owner. Scates v. Sandefer, 163 Tenn. 558, 44 S. W. (2d) 310.

"Hence the test of whether the doctrine applies in a particular case is twofold: (1) Whether at the time of the accident the vehicle involved was being maintained by the owner for the use and pleasure of the family group of which he was a member; and (2) whether at the time of the injury it was being used in furtherance of that purpose with the permission, either expressed or implied, of the owner. In some cases, the particular type of the vehicle may have a substantial bearing on the issue of whether it was maintained for the pleasure of the family, but it is not conclusive. Nor does the fact that the owner used the car in the prosecution of his business, exclude the idea that when not engaged in such use it was at the disposal of the other members of the family, to be used for their pleasure and convenience. King v. Smythe, supra.

"In the present case, there was not only no substantial evidence to show that the truck was maintained by the owner Barker, Sr., wholly or partly for

the pleasure and convenience of his family, but the undisputed evidence showed that it was maintained by him for farming purposes. It is true that occasionally Barker, Sr., having no other vehicle, did himself use the truck to transport his family to and from church and the like, but this fact does not make the family purpose doctrine applicable to its use by other members of the family. It is also true that the members of the family, including the defendant, Barker, Jr., occasionally used the truck for their own pleasure. But by the undisputed evidence, it was shown that upon each occasion it was necessary that they seek and obtain the permission of Barker, Sr., before using the vehicle, and that they in fact did do so. Sometimes such permission was granted and sometimes it was declined. No member of the family had general permission to use the vehicle.

*     *     *     *     *     *

"Hence, under the undisputed facts, Barker, Jr., at the time in question, was no more than a bailee of the truck, and this being true, the negligence of the son was not imputable to the father."

In the case of Harber v. Smith, supra, the son was driving his father's car with special permission while on leave from the army. The proof was that when the son had lived at home he kept the key to the car and drove his father back and forth to work and occasionally used the automobile with the special permission of his father for his personal use. The court held that the Family Purpose Doctrine did not apply.

In the case of Woodfin et al. v. Insel, 1931, 13 Tenn. App. 493, cited and relied upon by the plaintiff-in-error a grandmother lived in the home of her daughter and son-in-law. The grandmother owned an automobile which was often driven by her grandson at her request and for the benefit of the grandmother. However, the proof also showed that the grandson was. granted permission from time to time to use the automobile for his own purposes. The automobile was involved in a collision while the grandson was driving the automobile for his own purposes but with the knowledge and permission of his grandmother. Suit was brought and the Court of Appeals held that the grandmother was not liable under the Family Purpose Doctrine.

The court pointed out that the grandmother was not the head of the family and owed no duty of support, pleasure or convenience to her children or grandchildren; and also observed that there was no evidence that she paid for the gasoline and oil when the automobile was being used by others with her permission and the fact that she required special permission each time the car was used indicated that the car was not being maintained for general family purposes.

In our opinion the three cases above referred to are readily and clearly distinguishable from the case at bar in that in each of these three cases the higher court found as a fact that the owner of the vehicle involved in the accident had not furnished the same for the convenience and pleasure of his family; whereas in the present case Mr. Driver unequivocally testified that he furnished the car for the use and convenience of the members of his family including his teen-age daughter, Gayle Driver.

Thus it clearly appears that the requirement of Mr. and Mrs. Driver that their daughter, Gayle, have special permission each time she used the automobile had no bearing on the purpose for which the car was kept and furnished but related only to their general parental supervision of a teen-age daughter which is certainly commendable. Therefore, we hold that the Family Purpose Doctrine is applicable in the present case.

Next, the plaintiff-in-error contends that even though the Family Purpose Doctrine applies in this case the negligence of Bobby Joe Moore, the driver of the automobile, cannot be imputed to the owner, Clarence Driver.

In support of this contention the plaintiff-in-error cites and relies upon three Tennessee cases: Potter v. Golden Rule Grocery Company, 169 Tenn. 240, 84 S. W. (2d) 364; Tennessee Coach Co. v. Reece, 178 Tenn. 126, 156 S. W. (2d) 404, and Messer v. Reid, 186 Tenn. 94, 208 S. W. (2d) 528.

In the case of Potter v. Golden Rule Grocery Co., 1935, supra, Walter C. Morley and Claude Morley operated a grocery store under the trade name of Golden Rule Grocery Company and owned a Chevrolet truck which was being used to deliver groceries at the time a child, playing in or near the street, was run over and killed. The truck was in charge of one Mack Free who was instructed not to permit any person to ride upon or drive the truck. On this trip and before the accident Free had permitted Harold Morley, the 13-year old son of Walter C. Morley, to enter the truck and drive it and Harold was driving when the accident occurred. Free was seated beside Harold.

The Trial Judge had directed a verdict in favor of the owners of the truck and the Court of Appeals had reversed and remanded the case for a new trial. In affirming the action of the Court of Appeals our Tennessee Supreme Court, through Judge McKinney, quoted with approval Section 241 of the Restatement of the Law of Agency. From the opinion affirming the action of the Court of Appeals remanding the cause for a new trial we quote as follows [169 Tenn. 240, 84 S. W. (2d) 366]:

"With the authorities in hopeless confusion upon this question, the American Law Institute adopted an intermediate rule in its Restatement of the Law of Agency, Vol. 1, sec. 241, as follows:

" 'A master who has entrusted a servant with an instrumentality is subject to liability for harm caused by its negligent management by one to whom the servant entrusts its custody to serve the purposes of the master, if the servant should realize that there is an undue risk that such person will harm others by its management.'

"In explanation of the text, the Institute has added the following pertinent comments:

" 'c. Liability only where transfer is negligent. Under the rule stated in this Section, in the absence of authority in the servant to delegate to another control over the instrumentality, the master is liable only if the servant, at the time he surrenders custody, has reason to believe that the change of custody is likely to result in harm to others. Such likelihood may exist because of the known incompetence or recklessness of the person to whom custody is given or, in the case of an instrumentality likely to do

harm if not carefully managed, because the servant does not know of the qualities of such person. Likewise, it may be negligent to surrender custody to one likely to abandon the instrumentality in a dangerous situation or to surrender its custody to an incompetent person. * * *

" 'e. Where the servant remains in control. A servant, while remaining with the instrumentality, may surrender its immediate control to another, as where the driver of a truck permits a boy to drive it. Although such surrender is not negligent, the master remains subject to liability for any negligence of the employee in supervising the conduct of the other. However, in the absence of negligence by his servant, the master is not liable for any casual negligence of the other while under the supervision of the servant.

" 'f. Harm to transferee. If the person to whom the servant entrusts the instrumentality is incompetent because of his age or lack of experience and is hurt without fault owing to such age or inexperience, the master is not subject to liability for the conduct of the servant in endangering such person by giving him possession, except where the servant is authorized or apparently authorized so to give possession.'

"This rule appears to us to be sound and just, and we approve it. In its final analysis it fastens liability on the master where his servant is negligent, otherwise there is no liability. If the servant, without authority, intrusts the instrumentality to one whom, on account of his age, inexperience, or recklessness, he has reason to believe is likely to harm others, the master would be liable. Such liability would result

where the party was known to the servant to be intoxicated or insane. On the contrary, where the servant intrusts the instrumentality to one whom he knows to be reliable and experienced, there would be no liability. So that, in the instant case, should the jury find that young Potter's death was due to the negligent operation of the truck, that Potter was not guilty of contributory negligence, and that Free was guilty of negligence in permitting young Morley to drive the truck, then the grocery company would be liable. Or if the jury should find that Free was not guilty of negligence in permitting young Morley to drive the truck, but that Free was supervising his conduct, and in so doing was guilty of negligence, then in that event the grocery company would be liable.

"The Court of Appeals reached the right result, and hence the writ will be denied."

In Tennessee Coach Co. v. Reece, 1941, 178 Tenn. 126, 156 S. W. (2d) 404, one Francis, driver of a bus owned and operated by defendant Tennessee Coach Company, stopped at a garage in Rogersville to have repairs made to the disabled bus. The plaintiff, Reece, a mechanic, employed at the city garage was assigned to make repairs to the bus. There was trouble with the ignition system and the mechanic, Reece, primed the carburetor with a small amount of gasoline and then had the starter pressed to see if the motor would run. When these tests were started the driver of the bus, Francis, was present. During the process he was called to the telephone and he left the bus and directed a by-stander, Wilson, to work the starter at the instruction of the plaintiff, Reece.

There was danger of a backfire and the by-stander, Wilson, negligently pressed the starter before Reece was back out of danger and a flame burst out severely burning plaintiff Reece. The proof showed that the driver, Francis, had returned from the telephone call and was present at the time Wilson pressed the starter which caused the backfire. The opinion of Judge Green referred with approval to the cases of Potter v. Golden Rule Grocery Co., supra; Elkin Motor Co. v. Ragland, 6 Tenn. App. 166, and Greer v. McKee, 13 Tenn. App. 625.

Our Tennessee Supreme Court held that the Tennessee Coach Company was liable for the injuries sustained by plaintiff Reece as the result of the negligence of the by-stander, Wilson. Apparently, the decision was bottomed upon the theory that Francis, the driver of the bus, was negligent in delegating the manipulation of the starter to the by-stander, Wilson, without knowledge of Wilson's qualifications to perform such operations and also upon the theory that the servant, Francis, was present and negligent in supervising the conduct of the by-stander, Wilson.

Messer v. Reid, supra, is distinguishable from the case at bar in that in the Messer case the minor son had entrusted the car to a friend to go get some whiskey for the benefit of the minor son and his party. The minor son was not in the car at the time the friend had the collision. In the present case Miss Gayle Driver was riding in the automobile alongside Bobby Joe Moore whom she had asked to drive the car in her place and stead.

Plaintiff-in-error very cogently argues that the doctrine of constructive identity which apparently was followed in the early cases of Elkin Motor Co. v. Ragland,

6 Tenn. App. 166, and Greer v. McKee, 13 Tenn. App. 645, was subsequently overruled by the opinion of Justice McKinney in the case of Potter v. Golden Rule Grocery Co., supra.

As we stated above Judge Green in the case of Tennessee Coach Co. v. Reece, supra, referred with approval to Potter v. Golden Rule Grocery Co., to the Elkin Motor Co. case and Greer v. McKee, without commenting on whether or not the doctrine of constructive identity was overruled by Potter v. Golden Rule Grocery Co. We find it unnecessary to a decision in the present case to determine whether or not the doctrine of constructive identity is or is not applicable in Tennessee.

■ Under the authority of Potter v. Golden Rule Grocery Co. and Tennessee Coach Co. v. Reece there was ample evidence upon which the jury could find the daughter, Gayle Driver, guilty of proximate negligence in her supervision of Bobby Joe Moore's driving of the automobile. We think it clearly appears from the record that Bobby Joe Moore lost control of the car as a result of the negligent act of himself and Gayle Driver in engaging in a kiss while Bobby Joe Moore was driving the automobile at a speed of 40 miles per hour and especially under the crowded condition then prevailing in the automobile.

■ Plaintiff-in-error insists that the negligence of Bobby Joe Moore is not imputable to the owner, Mr. Driver, because the declaration sought to recover only for the negligence of Bobby Joe Moore as agent of the defendant, driver; that the plaintiffs failed to prove the actual agency and failed to allege negligence on the part

of Gayle Driver. With this contention we must respectfully disagree.

The declaration alleged all of the facts leading up to the wrecking of the car and also alleged that the driver, Bobby Joe Moore, negligently lost control of the automobile and that Miss Gayle Driver, the daughter of the defendant, herself actively co-operated to help distract the attention of the driver and as a result the automobile left the highway. The declaration further charged that the driver was operating the automobile in the presence and under the supervision of the daughter of the defendant.

The defendant, Driver, joined issue on these averments and in a special plea stated, ''Defendant denies that his said daughter, Miss Gayle Driver, distracted or helped to distract the attention of the alleged driver, Bobby Joe Moore, or that she in any way contributed to the alleged cause of the accident.'' The averments of the declaration were sufficiently broad to charge Gayle Driver with negligence along with Bobby Joe Moore. The negligence of Gayle is imputable to her father, Mr. Driver.

In the third instance, the plaintiff-in-error insists that Mr. Driver is not liable for the negligence of Gayle Driver and Bobby Joe Moore in this instance because Gayle Driver deviated from the permission given her by her father and drove or had the car driven three miles outside the corporate limits of the City of Humboldt. Plaintiff-in-error relies strongly upon the case of Long v. Tomlin, 22 Tenn. App. 607, 125 S. W. (2d) 171.

In that case a young man slipped his father's car out without permission and injured the plaintiffs. The jury found that the son, Jimmy Long, had implied consent of

his father to drive the automobile at the time of the accident. The Court of Appeals reversed the case finding as a fact that the car was not bought or maintained and used by the father as a family purpose car and that at the time of the accident the son was driving the car without the permission or consent of his father.

Hence, the Long case is not analogous to the case at bar for two reasons: First, in the present case the father admitted that the automobile was furnished for the use, convenience and pleasure of his family including the daughter, Gayle Driver, and second, the proof clearly shows that she was using the automobile at the time of the accident with his express knowledge and consent.

Even though Mr. Driver did testify that his daughter did not have permission to drive outside the corporate limits of Humboldt on the night in question, yet he admitted that on many occasions she drove the automobile to the Humboldt Country Club which is also located about three miles outside the city limits of Humboldt and that occasionally he did permit her to drive the car outside the city limits of Humboldt to other places. There is no proof in the record that on the night in question when Miss Driver sought permission to ride around a little longer that he expressly forbade her to go outside the city limits of Humboldt.

At the request of the defendant, Clarence Driver, His Honor the Trial Judge charged the jury that Mr. Driver as the owner of the automobile had a legal right to prohibit its use outside the corporate limits of Humboldt and that the driving of his automobile in a locality so prohibited would be a deviation from the authority conferred for its use and any negligence of the driver of

said car while operating the same in said locality in disobedience of instructions from the owner would not be imputed to the owner. We think there was ample evidence upon which the jury could well have found that if there was such an express limitation of Miss Driver's authority it was admonitory only and not strictly enforced by Mr. Driver against his daughter and also the jury could well have found that driving two or three miles out the highway did not constitute a material deviation by Miss Driver from the authority given her.

The fact remains that when the accident happened three miles outside the city limits of Humboldt, Miss Gayle Driver was in charge of and using the automobile for the same purposes for which she was using the automobile while within the city limits of Humboldt, namely, her own use and pleasure.

In our opinion the disobedience by Miss Driver in driving three miles beyond the corporate limits of Humboldt would be likened very much to her disobedience of her father's instruction not to drive the car over a certain speed per hour. In all probability she had been admonished not to exceed a certain speed and if at the time of the accident it should be assumed that she was exceeding her authorized speed limit certainly it could not be contended that such disobedience relieved the father of liability.

Hence, assignments of error I and II are respectfully overruled.

For the reasons set out above assignment of error No. III relating to the charge of His Honor on the theory of the Family Purpose Doctrine is respectfully overruled.

Assignment of error No. IV complains of the refusal of the Trial Judge to charge defendant's special request No. 2 which was to the effect that the Family Purpose Doctrine does not apply where members of the family must obtain special permission on each occasion of the vehicle's use by them. This question was covered in our discussion of assignments of error I and II and therefore, it is respectfully overruled.

Assignment of error No. V complains of the action of the Trial Judge in refusing to submit to the jury defendant's special issues of fact. T. C. A. sec. 20-1316 expressly provides that the Trial Judge, in his discretion, may direct and supervise the formulation of special issue or issues of fact for submission to and answer by the jury. We can see no abuse of His Honor's discretion in the present cause in refusing to submit said special issues of fact and therefore, this assignment of error is respectfully overruled.

Accordingly, judgments will be entered in this cause in favor of the two plaintiffs in the amount of $1,000 and $5,000 respectfully, each drawing interest from March 4, 1959, the date of overruling the motion for new trial. Plaintiff-in-error, Clarence Driver, is taxed with the costs of this appeal as well as with the costs in the lower court.

Avery, P. J. (W. S.) and Bejach, J., concur.