18789

John B. CROWDER, Respondent, v. Rallie M. CARROLL, Appellant.
(161 S. E. (2d) 235)

*Messrs. Grier, McDonald, Burns, Bradford & Erwin,* of Greenwood *for Appellant,*

*Messrs. Nicholson & Nicholson,* of Greenwood *for Respondent,* 

*Messrs. Grier, McDonald, Burns, Bradford & Erwin,* of Greenwood *for Appellant, in Reply,* 

May 8, 1968.

BUSSEY, Justice.

In this action plaintiff-respondent Crowder seeks to recover from the appellant Carroll damages for loss of consortium resulting from personal injuries sustained by. his wife when a car driven by her was in collision with an automobile owned by Carroll and operated by his 18 year old son who was, at the time of the accident, living in the home of his parents. Trial resulted in a verdict for the plaintiff and the defendant appeals from an order of the trial court denying a motion for a judgment *non obstante veredicto,* and, alternatively, for a new trial.

Plaintiff's wife, who was most seriously injured, was covered by the South Carolina Workmen's Compensation Act and elected to receive statutory benefits thereunder. In his suit for loss of consortium plaintiff, however, did not seek to recover any medical expense or other element of damage as to which his wife was entitled to claim benefits under the Workmen's Compensation Law. Asserted liability on the part of the defendant was based on the family purpose doctrine.

The case was tried under rather unusual circumstances due to the fact that defendant's son, Ronald M. Carroll, the

driver of the car, was at the time of the trial unavailable, being in the Army and stationed in Germany. The defendant himself was unable to attend due to illness, and statements were admitted as to what both father and son would testify to had they been present at the trial. None of several other occupants of the Carroll automobile at the time of the collision were called as witnesses and there is no explanation in the record as to why they were not.

The accident occurred on the 10th of May 1963, and the case was apparently tried in October 1966. At the time of the accident the defendant was custodian in charge of maintenance at the First Presbyterian Church in Greenwood. Defendant's statement admitted into evidence read as follows:

"On the morning of May 10, 1963 I started up my 1954 Buick automobile when I returned from work. The car had a bad battery and would not start when I had gone to work. After starting the car I drove it to a service station to get the battery charged and on this trip my son, Ronald, and his friend David Bell, went with me.

"Later I drove to the First Presbyterian Church with the two boys in the car. I got out at the Church and told David Bell to drive. I saw him get in the driver's seat. I gave my son some money and instructions to pay the telephone and water and light bills in Greenwood. I did not let my son, Ronald, drive because he did not have a driver's license."

Precisely what time the two boys left the church does not appear in the record, but after the payment of the mentioned bills, they proceeded to go on a pleasure drive, having picked up several other young people, and the accident occurred at approximately 11 o'clock A. M., several miles from downtown Greenwood. All of the evidence for both plaintiff and defendant is to the effect that David Bell was instructed to drive and that the defendant's son did not have permission to drive the car on this particular trip, but that David Bell turned the wheel over to defendant's son who was driving at the time of the collision. The facts so far related are undisputed.

Defendant contends that the evidence is insufficient to support a recovery under the theory of the family purpose doctrine. We think this contention is without merit. In considering whether the defendant was entitled to a directed verdict on this ground, it is elementary that all of the evidence and the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiff. From the testimony of defendant's wife it is clearly inferable that the automobile was maintained by the defendant as a family purpose automobile; that it was frequently driven by David Bell for family purposes; that while their Son Ronald was not allowed to drive, because he did not then have a driver's license, he was allowed to use the automobile for his pleasure when accompanied by a competent, licensed driver, such as David Bell. In this connection it should be noted that not even the statement of the defendant himself attempted to assert that the car was turned over to the boys solely for the purpose of paying the bills. In brief, the evidence is clearly susceptible of the inference that the car was, in fact, a family purpose car and that it was at the time of the collision being used for a family purpose.

The defendant contends, however, that the family purpose doctrine does not apply because, at the time of the accident, his son, Ronald Carroll, rather than David Bell, was driving the automobile, contrary to defendant's express instructions. No case precisely in point on the facts has been cited by counsel. Ordinarily, it is immaterial that the operation of a family purpose automobile was by a person other than the driver to whom it was entrusted as long as a family purpose is being pursued. *Norwood v. Parthemos,* 230 S. C. 207, 95 S. E. (2d) 168. The case *Burbage v. Curry,* 127 S. C. 349, 121 S. E. 267, is somewhat, though not precisely, in point on the facts. There the situation was somewhat the reverse of the situation here involved. In that case the wife of the owner of the family purpose automobile, contrary to the instructions of her husband, allowed a stranger to drive, and it was held that such act did not relieve

the husband of liability under the family purpose doctrine. The weight of authority from other jurisdictions is, we think, clearly against the contention of the defendant. In *Hawes v. Taylor* (Oregon 1967) 423 P. (2d) 775, the defendant entrusted her automobile to a sixteen year old son and his girl friend, Gloria Epperly, with instructions to them both that the car was to be driven by Gloria. Contrary to instructions, the son was driving at the time of the accident and the family purpose doctrine was held to apply.

In *Turner v. Hall's Adm'x.* (Ky. 1952) 252 S. W. (2d) 30, a son was allowed to use the car with the express instructions not to allow others to drive or even take passengers. An accident resulting from the negligence of a friend whom the son allowed to drive was held to be within the family purpose doctrine. In *Richardson v. True* (Ky. 1953) 259 S. W. (2d) 70, a parent was held liable for negligence of son who was instructed not to drive the family automobile outside the city limits, the accident having occurred while son was violating instructions. In *Evans v. Caldwell*, 184 Ga. 203, 190 S. E. 582, the son was instructed to return home immediately after a movie, but the parents were held liable for the negligence of the son where an accident occurred on the way to a dance after the movie.

Upon consideration of all of the evidence and the rationale of the pertinent, applicable authorities, we conclude that the issue of liability on the part of the defendant under the family purpose doctrine was properly submitted to the jury.

Defendant contends that he was entitled to a directed verdict on the ground that plaintiff's cause of action was assigned to his wife's employer by virtue of her having accepted benefits under the Workmen's Compensation Law. Defendant relies on Sections 72-121, 72-122, 72-123 and 72-124 of the 1962 Code of Laws, with particular reliance on the last mentioned section, which deals with subrogation of employers to claims against third persons.

No decision from this or any other jurisdiction is cited in support of defendant's contention in this respect. His argu-

ment, based on the cited Code sections, is novel and ingenious but we think such without merit and will not unduly lengthen this opinion by dealing therewith in detail.

The plaintiff's cause of action against the defendant was a common law right of his, independent of the cause of action which his wife had against the defendant. The question naturally arises as to how the wife could, by her voluntary acceptance of compensation benefits, assign a cause of action which did not belong to her. The defendant attempts to answer this by arguing that the statute law assigned it. Assuming, without deciding, that the General Assembly had the power to abolish or assign the husband's cause of action, or, more precisely, authorize his wife to assign such, without his consent, a clear intent on the part of the legislature to do so would be essential. It is elementary that statutes in derogation of common law rights are strictly construed and not extended in application thereof beyond the clear legislative intent. See cases collected in West's South Carolina Digest, Statutes, 239.

Suffice it to say that we see nothing in any of the Code sections relied upon by the defendant evincing an intent on the part of the General Assembly, let alone a clear intent, to either abolish or assign to an employer a husband's common law right of action against a third party resulting from injuries to his wife. At least a primary purpose of the subrogation statute is to enable an employer to recover from the third party that which the employer has paid to the injured employee. In the instant action for loss of consortium, the husband seeks no recovery for medical expenses, loss of earning capacity of the wife, or any other element involved in, or covered by, the compensation benefits accepted by the wife from the employer.

Defendant contends that he is entitled to a new trial because of asserted trial errors, one of which involves admission, over the objection of the defendant, of certain testimony of the highway patrolman who investigated the accident. As above mentioned, the case was tried under rather

unusual circumstances, and counsel for the plaintiff was aware of a statement from Ronald Carroll which was to be offered in evidence, and in which he exonerated himself from any excessive speed and gave as a cause of the accident a brake failure of the automobile he was driving, at least inferentally, in anticipation of the introduction of such statement, counsel for plaintiff questioned the highway patrolman as to statements allegedly made by the said Ronald Carroll, approximately two hours after the accident and again the following day, which were contrary in material particulars to the written statement of Ronald Carroll which was to be offered. Counsel for defendant objected on the ground that such testimony was hearsay and outside the rule of *res gestae,* whereupon the trial judge promptly ruled that since the case was based on the family purpose doctrine, the statements to the patrolman would be admissible as those of an agent of the owner of the automobile.

The statement of Ronald Carroll not yet having been offered, any effort to contradict or impeach such statement was of course premature, and the reason his Honor gave in overruling the objection was, of course, erroneous under the decision of this court in *Marshall v. Thomason,* 241 S. C. 84, 127 S. E. (2d) 177, 179. Included in the testimony of the highway patrolman were statements allegedly made by Ronald Carroll as to the permissive use of defendant's automobile on the occasion. The admission of such was, however, we think nonprejudical because the testimony of the highway patrolman thereabout was in accord with all other evidence adduced on the particular point, including the evidence offered by the defendant. According to the patrolman, Ronald Carroll had admitted a speed of 70 miles per hour and had made no mention of any brake failure when the accident was under investigation.

At the conclusion of the defendant's testimony, counsel for plaintiff, apparently realizing that the reason given for the previous ruling of the trial judge was at least probably

erroneous, recalled the highway patrolman as a reply witness and the following occurred:

"Q. Mr. Mack, you previously testified as to a conversation that you had with Ronald M. Carroll several hours after the collision?

"A. Yes, sir.

"Q. During the course of those conversations did you inquire of him as to the speed that he was operating the automobile with?

"The Court: That's been testified to.

"Mr. Nicholson: Yes, sir. I offer again at this time to cure any possible question about its admissiblity as contradiction of the Defendant's testimony.

"The Court: Well, you went into it in your case in chief and it's before the Jury. It's not reply testimony. It's not in reply to anything new. I couldn't permit it."

Following such ruling counsel for neither side further pursued the matter. It should have been obvious to all concerned, we think, that counsel for plaintiff was endeavoring to cure any error by offering the evidence again to contradict and impeach the statement of Ronald Carroll. Such statement was the only evidence offered by the defendant relative to the speed of his vehicle.

While the testimony of the highway patrolman as to the statements made by Ronald M. Carroll was prematurely admitted and the reason given by the trial court for its admission erroneous, once the statement by Ronald was in evidence, the testimony of the patrolman became clearly relevant and admissible for the purpose of impeaching such statement. Such being the case, we cannot see any prejudice to the defendant as a result of such evidence having been prematurely admitted, or a refusal of the trial judge to permit it to be repeated in reply since it was already in the record. Ronald Carroll being absent, there was of course no foundation laid for the impeachment of his testimony, but no point thereabout was raised either below or here. Generally a foundation has to be laid for impeachment,

but even if the point had been raised below, the admission of the impeaching evidence, in the absence of a foundation, would have been within the discretion of the trial judge. *Lusk v. State Highway Department,* 181 S. C. 101, 186 S. E. 786.

Defendant argues that even if the testimony of the highway patrolman was admissible in reply as impeachment of the statement of Ronald Carroll, he was entitled to an instruction to the jury that such testimony could not be taken as evidence of the speed of the automobile, but could be considered only for the purpose of contradiction and impeachment. The answer to this is simply that defense counsel was put on notice that, when plaintiff's counsel was offering such testimony in reply, it was for the purpose of impeachment and to cure any error in its admission initially, and yet he did not suggest or request of the judge the instruction which he now contends he was entitled to.

The only other contention of the defendant is that the court erred in excluding from the statement of the defendant, offered in evidence, the following sentence, "I did not at any time permit Ronald to drive the car and had on various occasions refused permission to drive because he had no license."

The court excluded such, *inter alia,* on the ground that the language did not refer to the occasion in question, but to other occasions. We think there was no error in such ruling, but, in any event, there was no prejudice since all of the evidence for both the plaintiff and the defendant was to the effect that Ronald did not have permission of the defendant to drive on the day of the accident.

We deem the exceptions of the appellant to be without merit, and the judgment of the lower court is, accordingly,

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.