231 P.3d 940

**Amy YOUNG, Plaintiff/Appellee,**

**v.**

**Kenneth L. BECK and Barbara Beck, husband and wife, Defendants/Appellants.**

**No. 1 CA–CV 09–0188.**

Court of Appeals of Arizona, Division 1, Department C.

May 20, 2010.

Beale, Micheaels & Slack, P.C. By K. Thomas Slack and Tracy A. Gromer, Phoenix, Attorneys for Plaintiff/Appellee.

Diane M. Lucas, P.C. By Diane M. Lucas and Michael S. Ferraro, Phoenix, Ehmann DeCiancio, PLLC, By Christopher Robbins, Tempe, Attorneys for Defendants/Appellants.

## OPINION

BROWN, Judge.

¶ 1 Jason Beck, driving a vehicle furnished by his parents, Barbara and Kenneth Beck (the "Becks"), was involved in a car accident resulting in serious injuries to Amy Young. The question presented here is whether the Becks are liable for damages allegedly caused by their son's negligence based on the family purpose doctrine. For the following reasons, we hold that the Becks are liable for Jason's negligence, notwithstanding he drove the vehicle contrary to parental restrictions.

## BACKGROUND

¶ 2 Jason, age seventeen at the time of the accident, was driving a car provided by his parents. Mrs. Beck had given Jason permission to drive from his place of employment to his friend's house to spend the night. After arriving at his friend's house, Jason was joined by more friends; Jason drove as he and his friends participated in "egging" houses and parked vehicles. Later that evening, after dropping off a member of the group at her home, Jason collided with a vehicle driven by Young.

¶ 3 Jason had been involved in another accident about a month earlier. As a result, the Becks placed restrictions on his driving privileges. Jason was permitted to drive the car to school, church, or work, but was prohibited from serving as a "taxi service" for his friends or their girlfriends. These "restrictions" were in place at the time Jason caused the car accident involving Young.

¶ 4 Young sued Jason for damages based on his alleged negligent conduct in causing the accident. The complaint also named the Becks as defendants, alleging they were liable for Jason's negligence under the family purpose doctrine because Jason was driving a car furnished to him by his parents for his pleasure and convenience, with their implied or express consent. Both parties moved for summary judgment on the applicability of the family purpose doctrine. Following oral argument, the court ruled in favor of Young. The court framed the issue as whether the family purpose doctrine applies when "a parent has specifically prohibited a particular use of a vehicle" and the "liability [was] incurred while using the vehicle for the particular use and purpose that was prohibited." The court summarized Arizona law relating to the family purpose doctrine and then explained its resolution of the issue:

In this case, the vehicle was being used at the time for the convenience of the child in dropping off friends. The fact that he was precluded from doing that particular activity does [not] mean that the use was not for

the convenience of the child in engaging in the activity. It clearly was.

Applying the doctrine broadly to the facts of this case, in keeping with the purpose of the doctrine to provide reparation from the closest financially responsible party to the wrongdoing minor, the [c]ourt finds the family purpose doctrine applies in this case. It is undisputed that the control of the vehicle by the minor was provided by the parents. And the purpose for which it was being used was a family purpose, since it clearly was for the convenience of the minor family member.

¶ 5 The parties subsequently entered into a "high-low" settlement agreement, providing a range of damages to be paid from the Becks to Young depending on whether the trial court's summary judgment ruling is affirmed or reversed on appeal. Based on the pleadings and the argument of counsel, the trial court entered judgment in favor of Young and the Becks timely appealed.

## DISCUSSION

¶ 6 Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). We view the facts in a light most favorable to the nonmoving party and draw any inferences reasonably derived from the facts in favor of that party. *Angus Med. Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 162, 840 P.2d 1024, 1027 (App.1992). In determining whether any genuine issues of material fact exist and whether the trial court erred in applying the law, our review is de novo. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App. 2000).

### A. Applicability of the Family Purpose Doctrine

¶ 7 The family purpose doctrine was adopted by the Arizona Supreme Court in 1919, when the court addressed whether a father could be held liable for his son's negligent operation of an automobile. *Benton v. Regeser*, 20 Ariz. 273, 278, 179 P. 966, 968 (1919). Bryan, the minor son, had driven his sisters to church in a family vehicle and then traveled to another church to find his brother. *Id.* at 275, 179 P. at 967. Unable to locate his brother, Bryan was driving home alone when he collided with a man riding a bicycle. *Id.* at 274–75, 179 P. at 966–67. The injured man sued Bryan for damages based on negligent operation of the car. *Id.* at 274, 179 P. at 966. Bryan's father was also named as a defendant based upon the allegation that Bryan was acting "as an agent" and "in the business" of his father at the time of the accident. *Id.* The claim against Bryan was dismissed during the trial, but a jury found the father liable. *Id.* On appeal, our supreme court affirmed the judgment, adopting the rule that a "father who furnishes an automobile for the pleasure and convenience of the members of his family makes the use of the machine ... his affair or business, and that any member of the family driving the machine with the father's consent, either express or implied, is the father's agent." *Id.* at 278, 179 P. at 967.

¶ 8 Since *Benton*, this rule has been referred to as the family purpose doctrine. *E.g., Pesqueira v. Talbot*, 7 Ariz.App. 476, 480, 441 P.2d 73, 77 (1968). Couched in more modern terminology, the doctrine provides generally that a head of household who furnishes or maintains a vehicle for the use, pleasure, and convenience of the family is liable for the negligence of family members who have the general authority to drive the vehicle while it is used for family purposes. *See Jacobson v. Superior Court*, 154 Ariz. 430, 431, 743 P.2d 410, 411 (App.1987). The doctrine is an "exception to the general principle that one who permits another to use his automobile does not thereby become liable for that person's negligence in the absence of an agency or employment relationship." *Brown v. Stogsdill*, 140 Ariz. 485, 487, 682 P.2d 1152, 1154 (App.1984). The doctrine's "social usefulness is its primary justification; it provides for an injured party's recovery from the financially responsible person—the family head—deemed most able to control to whom the car is made available." *Jacobson*, 154 Ariz. at 431, 743 P.2d at 411.

¶ 9 The Becks argue that the family purpose doctrine does not apply when, as in the

present case, a minor drives a family car for his own pleasure and convenience in violation of restrictions placed on the use of the car by his parents. The Becks further contend the trial court erred in finding that Jason's use of the car constituted a family purpose, essentially holding them strictly liable for Jason's negligence. In response, Young argues that the family purpose for which the vehicle is used "need be nothing more than the pleasure or convenience of the family member driver." In other words, Young asserts that even if Jason drove the vehicle in direct violation of restrictions imposed by his parents, his failure to comply does not affect their liability under the doctrine.

■ ¶ 10 Liability under the family purpose doctrine arises when: (1) there is a "family with sufficient unity so that there is a head of the family"; (2) the "vehicle responsible for the injury must have been one 'furnished' by the head of the family to a member of the family"; and (3) the "vehicle must have been used on the occasion in question by the family member with the implied or express consent of the head of the family for a family purpose." *Pesqueira*, 7 Ariz.App. at 480, 441 P.2d at 77; *Brown*, 140 Ariz. at 487, 682 P.2d at 1154. Applying the doctrine here, it is undisputed that the Becks were a family of sufficient unity, as they all lived in one household and the Becks provided Jason with room and board. *See Pesqueira*, 7 Ariz. App. at 480, 441 P.2d at 77 (finding a family existed for purposes of the doctrine where mother and daughter shared the same home and mother provided daughter with room and board). It is also undisputed that the Becks furnished the car to Jason, as they were the owners of the car and they paid for its maintenance, gas, and insurance. *Cf. Blocher v. Thompson*, 169 Ariz. 182, 186, 818 P.2d 167, 171 (App.1991) (finding parents did not furnish a car to their daughter when she used her own money to purchase the car and was fully responsible for its maintenance). The only disputed issue is whether Jason drove the car with the implied or express consent of the Becks for a family purpose.

¶ 11 There is no question that Jason had permission to drive on the night of the accident for certain purposes. According to his parents, however, that permission did not extend to the transporting of friends, a restriction imposed as a result of his prior accident. Indeed, the night of the accident Mrs. Beck told Jason that he could only drive the car from work to his friend's home. Thus, he did not have express consent to drive at the time of the accident because he was not given permission to transport friends.

¶ 12 To ascertain whether the Becks gave implied consent, we must determine if Jason drove the car for a family purpose. The Becks argue that serving a family purpose occurs only when a child acts as an agent for the parents. Relying on *Benton*, the Becks contend that Jason cannot be deemed their agent because he was serving his own pleasure and convenience as he was not transporting family members, acting as the family's chauffeur, or running errands for the family. *See* 20 Ariz. at 279, 179 P. at 968 (recognizing that "the minor son was the agent of his father in driving the machine at the time of the accident, and that he was engaged in the business of his father."). Consistent with prior decisions of this court, we do not read Benton so narrowly. *See Brown*, 140 Ariz. at 489, 682 P.2d at 1156 (citing *Benton*, 20 Ariz. 273, 179 P. 966; 60A C.J.S. § 433(5)) ("[T]he fact that the decedent was using the vehicle solely for his own purpose and pleasure at the time of the accident would not automatically rule out the application of the family purpose doctrine." (emphasis added)). Similar to other courts in first adopting the family purpose doctrine, our supreme court "used the language of the law of agency" to support the doctrine. *Pesqueira*, 7 Ariz.App. at 478, 441 P.2d at 75. Despite the doctrine's reliance on general agency principles, however, it is "defensible only because of its social usefulness." *See Jacobson*, 154 Ariz. at 431, 743 P.2d at 411. The doctrine has never purported to rely on a true agency relationship. *Id.* at 433, 743 P.2d at 413. Instead, its practical purpose is to "provide reparation for an injured party from the closest financially responsible party to the wrongdoing minor." *Id.*

■ ¶ 13 Accordingly, the question of whether implied consent has been given in a

particular case is generally determined by the parents' initial decision to furnish a vehicle that will be used for the pleasure and convenience of family members, as opposed to whether the driver was acting "in the course and scope" of "family business," as would be the case in a true agency relationship. *Cf. Jacobson,* 154 Ariz. at 432, 743 P.2d at 412 (comparing master-servant relationship with parent-child relationship); *Pruitt v. Pavelin,* 141 Ariz. 195, 205, 685 P.2d 1347, 1357 (App.1984) ("[A]n employer is vicariously liable only for the behavior of an employee who was acting within the course and scope of his employment."). As such, whether the vehicle is being operated for the direct benefit of only one family member or whether specific limitations are placed on the driver's use of the vehicle is largely irrelevant. *See Benton,* 20 Ariz. at 278–79, 179 P. at 968 (finding that even though son was alone in the vehicle when accident occurred, father impliedly consented to son's use based on father's decision to keep and maintain the vehicle for the "pleasure and convenience of the members of his family"); *Pesqueira,* 7 Ariz.App. at 481–82, 441 P.2d at 78–79 (noting a tenuous relationship between controlling a vehicle and controlling the driver of the vehicle, especially as it relates to an injured third party, as too much emphasis on the actual control of the child would "place a premium upon the incorrigibility of the child").

¶ 14 Here, we find no material questions of fact that would preclude summary judgment on the issue of whether Jason had implied consent from his parents to drive the car for a family purpose. Jason's parents admitted that they provided a vehicle to Jason for his use to drive to soccer practices and games, the mall, movies, concerts, church, school, and work. Mr. Beck conceded that it was more convenient "at times" for Jason to be able to drive himself places than for Mr. or Mrs. Beck to have to drive him. Mr. Beck acknowledged that Jason had implied consent to make stops when traveling to approved destinations. Further, Mrs. Beck admitted that she consented to his use of the car on the evening of the accident. In addition, both parents were fully aware that Jason previously disregarded driving restrictions they had imposed on him. Therefore, Jason operated the vehicle not only for his pleasure and convenience, but also for the convenience of his parents as they were relieved from the burden of finding alternative methods of transportation for Jason to attend his various activities.

¶ 15 Contrary to the Becks' assertions, the family purpose doctrine does not contemplate that a parent must give permission for every possible route or deviation that a family member may make while operating a vehicle. *See Driver v. Smith,* 47 Tenn.App. 505, 339 S.W.2d 135, 143 (1959) (comparing minor's disobedient act of driving the family car outside town limits to disobeying a parent's restriction not to drive above the speed limit and noting that "if at the time of the accident it should be assumed that she was exceeding her authorized speed limit certainly it could not be contended that such disobedience relieved the father of liability"). Because we apply the family purpose doctrine broadly, heads of household can be held liable for the negligent acts of other family members notwithstanding that a family member drives a vehicle in contravention of its expected use. *See Pesqueira,* 7 Ariz.App. at 479, 441 P.2d at 76 (citation omitted) ("When a parent provides an automobile for the pleasure and convenience of his family, it is not too much to demand that he insure society against its negligent use for such purposes."); *see also Brown,* 140 Ariz. at 487, 682 P.2d at 1154 (recognizing that the doctrine is to be given broad effect in Arizona). We therefore conclude that the Becks impliedly consented to Jason's use of the vehicle for his pleasure and convenience, which included the deviations he took on the night of the accident.

¶ 16 Our conclusion is consistent with decisions from other jurisdictions addressing the scope of the family purpose doctrine in the context of a child's failure to adhere to specific instructions as to the use of a vehicle. *See, e.g., Anderson v. Mason,* 141 S.W.3d 634, 639 (Tenn.Ct.App.2003) ("The fact that [a minor] had to get special permission before using the vehicle does not remove the vehicle from the general applicability of the family purpose doctrine."); *Phillips v. Dixon,* 236 Ga.

271, 223 S.E.2d 678, 679, 682 (1976) (finding a parent liable under the family purpose doctrine notwithstanding that the parent had specifically instructed the child not to let a third party drive the car and the child disobeyed the instruction); *First–City Bank & Trust Co. v. Doggett,* 316 S.W.2d 225, 230 (Ky.Ct.App.1958) ("If it is a family automobile, then the fact that the use on a particular occasion is without permission or in violation of instructions will not bar recovery against the parent who owns or controls the automobile."); *Driver,* 339 S.W.2d at 139 (applying the family purpose doctrine when a daughter drove the family car outside permitted town limits because the parents' requirement that the daughter "have special permission each time she used the automobile had no bearing on the purpose for which the car was kept and furnished but related only to their general parental supervision of a teen-age daughter").

¶ 17 The Becks suggest that upholding the trial court's decision here changes the family purpose doctrine from its intended purpose to strict liability. We disagree. The essence of our decision is that the Becks are liable because they impliedly consented that Jason could drive the vehicle at the time of the accident. If our supreme court intended to hold parents strictly liable for the mere act of allowing children to use a family vehicle, it could have said as much in *Benton.* Instead, the supreme court adopted the family purpose doctrine, which requires proof of the elements stated above. *Cf. Strine v. Walton,* 2010 WL 1508644, at *8 n. 4 (Tenn.Ct.App. Apr. 15, 2010) (noting that there would be no need for the family purpose doctrine "[i]f an owner of a vehicle were liable simply because they allowed someone to use their car").

¶ 18 Although the doctrine is to be construed broadly, we do not suggest that its application is without limits. *See Kraxberger v. Rogers,* 231 Or. 440, 373 P.2d 647, 654 (1962) (finding reversible error when the jury was not instructed that the family purpose doctrine applies only when a family member

drove the family car with the owner's knowledge and consent because evidence showed the minor had broken into the garage in order to obtain the stepfather's vehicle). We find it unnecessary in this case to attempt to draw any specific boundaries as to when violation of a driving restriction may constitute such a gross deviation by the child as to preclude parental liability under the family purpose doctrine. Instead, on this record, we conclude that the trial court correctly applied the family purpose doctrine in favor of Young on her claim against the Becks.

**B. Public Policy Considerations**

¶ 19 The Becks also argue that the family purpose doctrine should be abolished because it is "an anachronistic fashion, distorts every principle of agency and tort law, and directly conflicts with the public policy of this state as pronounced by the Arizona [L]egislature[.]" Specifically, the Becks assert that Arizona Revised Statutes ("A.R.S.") §§ 28–4009 (2004) [1] and 12–2506 (2003) provide evidence that the doctrine is contrary to this State's public policy. We disagree.

¶ 20 Section 28–4009, which requires Arizona drivers to maintain liability insurance, was enacted in 1995 and most recently amended in 1997.[2] *See* 1997 Ariz. Sess. Laws, ch. 1, § 233 (1st Reg.Sess.); 1995 Ariz. Sess. Laws, ch. 132, § 3 (1st Reg.Sess.). Section 12–2506, which deals with joint and several liability, was enacted in 1987 and most recently amended in 2001. *See* 2001 Ariz. Sess. Laws, ch. 181, § 1 (1st Reg.Sess.); 1987 Ariz. Sess. Laws, ch. 1, § 2 (1st Reg. Sess.). Both of these statutes were thus adopted decades after the family purpose doctrine was judicially created in 1919. *See Benton,* 20 Ariz. 273, 179 P. 966; *Bunker's Glass Co. v. Pilkington plc,* 202 Ariz. 481, 489, ¶ 32, 47 P.3d 1119, 1127 (App.2002) (recognizing that courts presume the legislature is aware of existing law when it passes legislation). Additionally, the family purpose doctrine has been upheld by this court as

---

**1.** We cite the current version of the applicable statutes because no revisions material to this decision have since occurred.

**2.** Similar to the family purpose doctrine, § 28–4009, Arizona's omnibus insurance coverage statute, applies when a driver is using a vehicle with the express or implied permission of the owner. A.R.S. § 28–4009(A)(2).

recently as 2003, when we found that A.R.S. § 28–3160 (2004), which imposes liability on any person who signs a minor's driving application, did not abrogate the doctrine. *Country Mutual Ins. Co. v. Hartley*, 204 Ariz. 596, 597, ¶ 5, 65 P.3d 977, 978 (App.2003) (holding the family purpose doctrine not abrogated by § 28–3160 because the statutory liability differs from the doctrinal liability, the legislature did not indicate an intention to abrogate the doctrine, the statute does not require abrogation, and case law supports the doctrine). Similarly, neither § 28–4009 nor § 12–2506 contains any language indicating legislative intent to abrogate, replace, preempt, or limit the family purpose doctrine. *See Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 274, 872 P.2d 668, 678 (1994) ("If the legislature intends to deny, abrogate, or preempt, it must clearly say so."); *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991) ("If the legislature fails to clearly and plainly manifest an intent to alter the common law, the common law remains in effect.").

¶ 21 The Becks further argue that if the doctrine is to be retained as a matter of public policy, then it is best left to the legislature to determine that policy, as the branch of government responsible for pronouncing public policy. We agree with the Becks generally that formulation of public policy is best left to the legislature, but we disagree that the family purpose doctrine should simply be deemed abolished until a further act of the legislature. *See State v. Murray*, 194 Ariz. 373, 375, ¶ 9, 982 P.2d 1287, 1289 (1999) ("[T]he separation of powers doctrine leaves creation of future statutory law to the legislative branch and determination of existing law and its application to past events to the judicial branch."). The family purpose doctrine has existed in Arizona since 1919 under the common law. Even if we were inclined to do so, "as an intermediate appellate court we are precluded from examining whether the doctrine judicially created should be judicially abrogated." *Pesqueira*, 7 Ariz.App. at 479, 441 P.2d at 76 (recognizing that the doctrine "does not fit neatly into the broad mosaic of our law"); *see also Lopez v. Ariz. Water Co., Inc.*, 23 Ariz.App. 99, 101, 530 P.2d 1132, 1134 (1975) (court of appeals is bound by prior decisions of the supreme court).

## CONCLUSION

¶ 22 For the foregoing reasons, we affirm the trial court's summary judgment finding the Becks liable to Young under the family purpose doctrine.

CONCURRING: PETER B. SWANN, Presiding Judge and LAWRENCE F. WINTHROP, Judge.