SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| AMY YOUNG, | ) Arizona Supreme Court |
| | ) No. CV-10-0230-PR |
| Plaintiff/Appellee, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-CV 09-0188 |
| KENNETH L. BECK and BARBARA BECK, | ) |
| husband and wife, | ) Maricopa County |
| | ) Superior Court |
| Defendants/Appellants. | ) Nos. CV2007-015269 |
| | )      CV2007-015556 |
| | ) |
| | ) **O P I N I O N** |
| | ) |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Glenn M. Davis, Judge

**AFFIRMED**
_____

Opinion of the Court of Appeals, Division One
224 Ariz. 408, 231 P.3d 940 (App. 2010)

**AFFIRMED**
_____


BEALE MICHEAELS & SLACK PC                                    Phoenix
      By   K. Thomas Slack
           Tracy Gromer
Attorney for Amy Young

EHMANN DECIANCIO PLLC                                          Tempe
      By   Joel DeCiancio
           Christopher Robbins

And

DIANE M. LUCAS PC                                             Phoenix
      By   Diane M. Lucas
           Michael S. Ferraro
Attorneys for Kenneth L. Beck and Barbara Beck

HUMPHREY & PETERSEN PC                                    Tucson
    By   Andrew J. Petersen
Attorney for Amicus Curiae Arizona Association of Defense
Counsel

HARALSON MILLER PITT FELDMAN & MCANALLY PLC              Tucson
    By   Stanley G. Feldman

And

GALLAGHER & KENNEDY P A                                  Phoenix
    By   C. Lincoln Combs
Attorneys for Amici Curiae Arizona Association for Justice
and Arizona Trial Lawyers Association
_____

**P E L A N D E R**, Justice

¶1      We adopted the family purpose doctrine nearly a century ago in *Benton v. Regeser*, 20 Ariz. 273, 179 P. 966 (1919). In this case we address its continued validity and application. We consider whether the Legislature has statutorily abrogated the doctrine and, if not, whether this Court should abolish it. Finally, we consider whether the doctrine was properly applied in this case.

## I.

¶2      The material facts are not in dispute. Kenneth and Barbara Beck furnished a sport utility vehicle to their seventeen-year-old son, Jason. He was the primary driver of that vehicle and used it for travel to and from school, church, and work. With his parents' permission, Jason could also drive the vehicle for social and recreational purposes. After Jason was involved in an accident while driving the vehicle, however,

2

the Becks specifically instructed him not to "taxi" his friends or drive their girlfriends home.

¶3        About a month later, Jason asked to use the vehicle to drive to a friend's house after work.  Jason's mother permitted him to do so, with the understanding that Jason would drive to his friend's house, spend the night there, and then drive home the next day.  Jason did not request or receive permission to use the vehicle for any other purpose.

¶4        After going to his friend's house, however, Jason drove around with several friends as they threw eggs at houses and parked cars.  Jason then drove his friend's girlfriend home, and while on his way to drop off another friend, collided with a vehicle driven by Amy Young, who was seriously injured.

¶5        Young sued Jason and also named the Becks as defendants, alleging they were liable for Jason's negligence under the family purpose doctrine.  On cross-motions for summary judgment regarding the doctrine's applicability, the superior court granted partial summary judgment in favor of Young.  The parties later entered into a "high-low" settlement, under which the Becks agreed to pay Young one of two specified damage amounts, depending on whether the summary judgment ruling was affirmed or reversed on appeal.

¶6        In the court of appeals, the Becks argued that the family purpose doctrine did not apply because Jason violated

3

their restriction against "transporting of friends." *Young v. Beck*, 224 Ariz. 408, 411 ¶ 11, 231 P.3d 940, 943 (App. 2010). Alternatively, the Becks contended that the doctrine should be abolished. *Id.* at 413 ¶ 19, 231 P.3d at 945. The court of appeals rejected those arguments and affirmed the superior court's ruling, holding the Becks vicariously liable for Jason's negligence. *Id.* at 412-14 ¶¶ 15, 19, 22, 231 P.3d at 944-46.

¶7 We granted review because the continued vitality of the family purpose doctrine is of statewide importance. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-120.24 (2003).

## II.

¶8 The family purpose doctrine "subjects the owner of a [vehicle] to vicarious liability when the owner provides an automobile for the general use by members of the family . . . and when the vehicle is so used by a family member." Dan B. Dobbs, *The Law of Torts* § 340, at 935 (2001); *see also Young*, 224 Ariz. at 410 ¶ 8, 231 P.3d at 942 ("[Under the doctrine,] a head of household who furnishes or maintains a vehicle for the use, pleasure, and convenience of the family is liable for the negligence of family members who have the general authority to drive the vehicle while it is used for family purposes."); *Brown v. Stogsdill*, 140 Ariz. 485, 487, 682 P.2d 1152, 1154 (App.

4

1984) (same).

¶9     This Court adopted the doctrine in *Benton*, which upheld a judgment holding a parent vicariously liable for his minor son's negligent driving.  Finding the doctrine supported by "sound reason" and "the great weight of authority," we framed the rule as follows:

> [A parent] who furnishes an automobile for the pleasure and convenience of the members of his family makes the use of the machine for the above purposes his affair or business, and . . . any member of the family driving the machine with the [parent's] consent, either express or implied, is the [parent's] agent.

*Benton*, 20 Ariz. at 278, 179 P. at 968.

### III.

¶10     Arizona courts have applied the family purpose doctrine in various contexts in the nine decades since *Benton*. *See* A.R.S. § 1-201 (stating, with certain qualifications, "[t]he common law . . . is adopted and shall be the rule of decision in all courts of this state").  The Becks argue, however, that the Legislature abrogated the doctrine by amending the Uniform Contribution Among Tortfeasors Act ("UCATA"), A.R.S. § 12-2506, in 1987.  *See* 1987 Ariz. Sess. Laws, ch. 1, § 2 (1st Reg. Sess.).  As amended, UCATA abolishes joint and several liability in most circumstances and establishes a system of comparative fault, making "each tortfeasor responsible for paying his or her percentage of fault *and no more*."  *State Farm Ins. Cos. v.*

5

*Premier Manufactured Sys., Inc.*, 217 Ariz. 222, 225 ¶ 12, 172 P.3d 410, 413 (2007) (quoting *Dietz v. Gen. Elec. Co.*, 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991)). Section 12-2506(A) provides as follows:

> In an action for personal injury, property damage or wrongful death, the liability of each defendant for damages is several only and is not joint, except as otherwise provided in this section.

¶11 Section 12-2506(D) sets forth three exceptions to UCATA's general rule of several-only liability:

> The liability of each defendant is several only and is not joint, except that a party is responsible for the fault of another person, or for payment of the proportionate share of another person, if any of the following applies:
>
> 1. Both the party and the other person were acting in concert.
>
> 2. The other person was acting as an agent or servant of the party.
>
> 3. The party's liability for the fault of another person arises out of a duty created by the federal employers' liability act, 45 United States Code § 51.

¶12 Citing § 12-2506(D)(2), the Becks argue that "the family purpose doctrine can survive under UCATA *only* if family members are agents or servants of the head of the family," and "Jason was not the agent, employee, or servant of his parents." They contend that, although *Benton* initially based the doctrine on an agency concept, Arizona courts have since repudiated the doctrine's agency foundation.

6

**¶13**      We generally do not find that a statute changes common law unless "the legislature . . . clearly and plainly manifest[s] an intent" to have the statute do so.  *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991); *see also Pleak v. Entrada Prop. Owners' Ass'n*, 207 Ariz. 418, 422 ¶ 12, 87 P.3d 831, 835 (2004) ("Absent a clear manifestation of legislative intent to abrogate the common law, we interpret statutes with every intendment in favor of consistency with the common law.") (quotation omitted).  This approach "encourages legislators to avoid leaving something as important as the existence or nonexistence of common-law rights to inference or implication."  *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 274, 872 P.2d 668, 678 (1994).

**¶14**      Our court of appeals has often noted that the family purpose doctrine departs from traditional agency law.[1]  *See Young*, 224 Ariz. at 411 ¶ 12, 231 P.3d at 943 ("The doctrine has never purported to rely on a true agency relationship.");

---

[1]      For example, under the Restatement (Second) of Agency, "the head of a household who permits members of the family to use his automobile is not liable for such use except when members use it on his affairs and as his servants."  Restatement (Second) of Agency § 238 cmt. c (1958); *cf*. *Reed v. Hinderland*, 135 Ariz. 213, 219, 660 P.2d 464, 470 (1983) (rejecting former rule that "mere ownership of a vehicle raised a presumption that the driver is the agent or servant of the owner," and holding that "mere presence of the owner in an automobile driven by another does not create any presumption of a master-servant relationship").

7

*Jacobson v. Superior Court (Steinhoff)*, 154 Ariz. 430, 431, 743 P.2d 410, 411 (App. 1987) (observing that the doctrine's "insecure[]" grounding "in agency principles . . . is the purest of fictions"); *Pesqueira v. Talbot*, 7 Ariz. App. 476, 479, 441 P.2d 73, 76 (App. 1968) (noting "the agency for pleasure precepts of the family purpose doctrine do not square with established principles of agency law") (quotation omitted).

¶15     But when we adopted the doctrine in *Benton*, we did so on the premise that "any member of the family driving the machine with the father's consent, either express or implied, is the father's agent," and we held that "the minor son was the agent of his father in driving the [family vehicle] at the time of the accident."   20 Ariz. at 278-79, 179 P. at 968. Similarly, in *Mortensen v. Knight*, we noted that "the family purpose doctrine is the settled law of this jurisdiction" and that "[a]gency, not ownership, is the test of liability."   81 Ariz. 325, 332, 333, 305 P.2d 463, 468 (1956).

¶16     In view of this history and the express exception in § 12-2506(D)(2) for "agent or servant" relationships, we cannot conclude that the Legislature intended to abolish the family purpose doctrine when it amended UCATA in 1987, abolishing joint and several liability.   Certainly nothing in UCATA manifestly indicates such a legislative intent.   Nor is it clear that § 12-2506(D) prescribes an exclusive list of situations in which

8

vicarious liability (as contrasted with joint and several liability) may be imposed.

¶17    In *Wiggs v. City of Phoenix*, we noted that "[j]oint liability and vicarious liability are related but separate doctrines," and that "[t]he joint liability that was abolished by A.R.S. § 12-2506[] was limited to that class of joint tortfeasors whose independent negligence coalesced to form a single injury." 198 Ariz. 367, 371 ¶ 13, 10 P.3d 625, 629 (2000). We therefore concluded that UCATA did not abolish the common-law, non-delegable duty doctrine, which imposes vicarious liability on an employer in certain circumstances for an independent contractor's negligence. *Id*. at ¶ 14. Noting that parties whose liability is only vicarious "have no fault to allocate," we interpreted the "agent or servant" provision in § 12-2506(D)(2) as simply making "express that which is implicit—the statute does not affect the doctrine of vicarious liability." *Id*. at ¶ 13. Because the family purpose doctrine is a form of vicarious liability, *Wiggs* strongly suggests that the Legislature did not abolish the doctrine in UCATA.

¶18    *Premier Manufactured Systems*, on which the Becks rely, does not alter that conclusion. *Premier* concluded that defendants against whom strict product liability was alleged could not be held jointly and severally liable after UCATA's 1987 amendment. 217 Ariz. at 224 ¶ 1, 172 P.3d at 412. We

9

distinguished *Wiggs*, reasoning that in strict product liability actions, "the various participants in the chain of distribution are liable not for the actions of others, but rather for *their own actions* in distributing the defective product." *Id.* at 226 ¶ 20, 172 P.3d at 414.

¶19     In contrast, the family purpose doctrine imputes liability not because of the head of the family's independent fault or breach of a legal duty, but because of "the agency relationship that is deemed to exist between the head of the household and the driver of the family car." *Camper v. Minor*, 915 S.W.2d 437, 448 (Tenn. 1996) (concluding that statute abolishing joint and several liability did not abrogate the family purpose doctrine); *see also Jacobson*, 154 Ariz. at 433, 743 P.2d at 413 (noting that the "doctrine does not rest on a classical theory of agency" but rather serves "a practical purpose" of "provid[ing] reparation for an injured party from the closest financially responsible party to the wrongdoing minor").   Thus, UCATA's 1987 amendment did not abrogate the family purpose doctrine.

¶20     We also reject the Becks' contention that the Legislature preempted the family purpose doctrine in the Financial Responsibility Act, which requires all vehicle owners to carry liability insurance and all policies to provide liability coverage for not only the owner but also all

permissive drivers. *See* A.R.S. §§ 28-4009, -4135. As the court of appeals correctly observed, that Act contains no "language indicating legislative intent to abrogate, replace, preempt, or limit the family purpose doctrine." *Young*, 224 Ariz. at 414 ¶ 20, 231 P.3d at 946. Requiring all Arizona vehicle owners to carry liability insurance coverage with minimum limits is not inconsistent with imposing vicarious liability under the family purpose doctrine. *Cf. Country Mut. Ins. Co. v. Hartley*, 204 Ariz. 596, 597 ¶¶ 1, 5, 65 P.3d 977, 978 (App. 2003) (holding that A.R.S. § 28-3160, which imputes certain driving misconduct of a minor to the person who signs the minor's driving application, did not abrogate or limit liability arising under family purpose doctrine).

## IV.

¶21 We next consider the Becks' argument that this Court should abandon the family purpose doctrine. The Becks contend the doctrine lacks a viable legal basis or public policy justification, is "grossly unfair to any parent [of] a young driver," and functions as "solely a penalty against wealthy parents."

¶22 "Just as the common law is court-made law based on the circumstances and conditions of the time, so can the common law be changed by the court when conditions and circumstances change." *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 17

11

n.21, 730 P.2d 186, 194 n.21 (1986) (quoting *Fernandez v. Romo*, 132 Ariz. 447, 449, 646 P.2d 878, 880 (1982)); *see also Estate of DeSela v. Prescott Unified Sch. Dist. No. 1*, CV-10-0172-PR, 2011 WL 134917, at *4 ¶ 15 (Ariz. Jan. 18, 2011) (noting that "the common law should adapt when circumstances make it no longer just or consistent with sound policy"). But stare decisis commands that "precedents of the court should not lightly be overruled," and mere disagreement with those who preceded us is not enough. *State v. Salazar*, 173 Ariz. 399, 416, 844 P.2d 566, 583 (1992) (quoting *State v. Crowder*, 155 Ariz. 477, 483, 747 P.2d 1176, 1182 (1987) (Moeller, J., concurring in part and dissenting in part)). Rather, "[w]e will overturn long-standing precedent only for a compelling reason." *State v. McGill*, 213 Ariz. 147, 159 ¶ 52, 140 P.3d 930, 942 (2006); *see also White v. Bateman*, 89 Ariz. 110, 113, 358 P.2d 712, 714 (1961) (noting our prior case law "should be adhered to unless the reasons of the prior decisions have ceased to exist or the prior decision was clearly erroneous or manifestly wrong").

¶23 Whatever the original soundness of the family purpose doctrine's use of agency principles, "it is now usually recognized that the doctrine represents a social policy generated in response to the problem presented by massive use of the automobile." Dobbs, § 340, at 935. The doctrine's primary

12

justification is to provide "for an injured party's recovery from the financially responsible person—the family head—deemed most able to control to whom the car is made available." *Jacobson*, 154 Ariz. at 431, 743 P.2d at 411; *see also Young*, 224 Ariz. at 410 ¶ 8, 231 P.3d at 942 (same). As *Benton* explained, when a vehicle "is placed in the hands of his family by a [parent], for the family's pleasure, comfort, and entertainment, . . . justice should require that the owner should be responsible for its negligent operation." 20 Ariz. at 278, 179 P. at 968 (quotations omitted).

¶24 The Becks contend that the doctrine's compensatory purpose was rendered moot by the Financial Responsibility Act. *See* A.R.S. §§ 28-4009, -4135. Just as we are not persuaded that those statutes abrogated the family purpose doctrine, *see supra* ¶ 20, we also are not convinced that a law requiring minimum liability coverage of only $15,000 per person and $30,000 per occurrence guarantees that victims of serious accidents caused by young, inexperienced, and financially insecure drivers will be fully compensated.[2] Nor is it clear that the doctrine's

---

[2] The Becks also point out that motorists may now protect themselves by purchasing uninsured (UM) and underinsured (UIM) coverage in their automobile insurance policies. *See* A.R.S. § 20-259.01. In originally enacting and repeatedly amending the UM/UIM statute, however, the Legislature never mentioned, let alone expressed a clear intent to abrogate, the family purpose doctrine.

13

policy goals of providing compensation to such accident victims and encouraging parents to ensure that their children operate motor vehicles safely and obediently are any less important today than ninety-two years ago. *See, e.g.*, *People v. Badke*, 865 N.Y.S.2d 488, 494 (Suffolk County Ct. 2008) ("The loss of life resulting from inexperienced teen drivers is a national problem of epidemic proportions.").

**¶25** The Becks also describe the doctrine as an "anachronism" that a "great majority" of jurisdictions have rejected. A number of courts (but none recently) have declined to adopt the family purpose doctrine.[3] But many states continue to apply the doctrine either as a matter of common law[4] or

---

[3] *See, e.g.*, *Watkins v. Clark*, 176 P. 131, 131 (Kan. 1918) (punishing defendant/parent under family purpose doctrine is not justified because a car is "not a dangerous instrumentality which the defendant let loose in the community"); *Jones v. Knapp*, 156 A. 399, 401 (Vt. 1931) (refusing to apply doctrine because such liability must depend on "settled common-law principles of master and servant or principal and agent"); *Sare v. Stetz*, 214 P.2d 486, 494 (Wyo. 1950) (declining to adopt doctrine because of its divergence from "clearly established" agency rules and noting that policy was better left to the legislature).

[4] Fourteen states, including Arizona, currently recognize a common-law family purpose doctrine. *See Hasegawa v. Day*, 684 P.2d 936, 939 (Colo. Ct. App. 1983), *overruled on other grounds*, *Casebolt v. Cowan*, 829 P.2d 352 (Colo. 1992); *Cogan v. Chase Manhattan Auto Fin. Corp.*, 882 A.2d 597, 602 (Conn. 2005); *Cox v. Rewis*, 429 S.E.2d 314, 316 (Ga. Ct. App. 1993); *Keeney v. Smith*, 521 S.W.2d 242, 243 (Ky. 1975); *Leonard v. Wilson*, 468 N.W.2d 604, 606 (Neb. 1991); *Madrid v. Shryock*, 745 P.2d 375, 377 (N.M. 1987); *Loy v. Martin*, 577 S.E.2d 407, 410 (N.C. Ct. App. 2003); *Malchose v. Kalfell*, 664 N.W.2d 508, 513 (N.D.

14

through statutes holding parents liable for the negligent driving of their children.[5] Thus, contrary to the Becks' assertion, Arizona is neither alone nor clinging to an antiquated doctrine.

**¶26** We are not here "writing on a clean slate," but rather on an established common law backdrop. *See State v. Lara*, 171 Ariz. 282, 285, 830 P.2d 803, 806 (1992). Nor has the family purpose doctrine "been eroded by the development of Arizona's common law." *Estate of DeSela*, 2011 WL 134917, at *3 ¶ 11. If

---

2003); *Barber v. George*, 927 P.2d 140, 141 (Or. Ct. App. 1996); *Thompson v. Michael*, 433 S.E.2d 853, 855 (S.C. 1993); *Camper*, 915 S.W.2d at 447-48; *Kaynor v. Farline*, 72 P.3d 262, 270 (Wash. Ct. App. 2003); *Ward v. Baker*, 425 S.E.2d 245, 249-50 (W.Va. 1993). In Florida, an automobile owner is vicariously liable for damages caused by any permissive user. *See Hertz Corp. v. Jackson*, 617 So.2d 1051, 1053 (Fla. 1992).

[5] At least nine jurisdictions have a statutory version of the doctrine or a broader law that imposes vicarious liability on vehicle owners for the negligence of all permissive users. *See* Cal. Veh. Code § 17708 (West 2010) (holding parents or guardians jointly and severally liable for negligence of minor drivers); Del. Code Ann. tit. 21, § 6105 (West 2010) (holding owner of vehicle liable for damages caused by permissive driver who is a minor); D.C. Code § 50-1301.08 (2010) (holding owner of vehicle liable for negligence of any permissive user); Iowa Code § 321.493(2)(a) (2010) (same); Ky. Rev. Stat. Ann. § 186.590(3) (West 2010) (holding owner liable for negligence of any permissive user who is a minor); Mich. Comp. Laws § 257.401(1) (West 2010) (holding owner liable for negligence of any permissive user and family members are presumed to be permissive users); Minn. Stat. Ann. § 169.09(5a) (West 2010) (holding owner liable for negligence of all permissive users); Nev. Rev. Stat. § 41.440 (2010) (holding owner of vehicle jointly liable for negligence of any family member using car with permission); N.Y. Veh. & Traf. Law § 388(1) (McKinney 2005) (holding owner liable for negligence of any permissive user).

the Legislature wants to abrogate the doctrine, it may do so explicitly. *Cf.* *Galloway v. Vanderpool*, 205 Ariz. 252, 257 ¶ 19, 69 P.3d 23, 28 (2003) (recognizing that Legislature can amend statutes and is an "appropriate forum to argue that public policy considerations favor abandoning the rule announced" in prior court decisions).

¶27     In sum, although policy arguments can be made for and against the doctrine, it is firmly entrenched in our common law and has been repeatedly applied by Arizona courts. Given the doctrine's long history, social utility in compensating injured victims, and conflicting policy considerations, we find no compelling reason to abrogate the doctrine. Nothing indicates that the rule has overburdened our courts or produced manifestly unjust results.

## V.

¶28     Finally, we consider the Becks' argument that the superior court misapplied the doctrine because, on the undisputed facts, summary judgment should have been entered for them instead of Young. Liability under the doctrine arises (1) when there is a head of the family, (2) who maintains or furnishes a vehicle for the general use, pleasure, and convenience of the family, and (3) a family member uses the vehicle with the family head's express or implied permission for a family purpose. *Brown*, 140 Ariz. at 487, 682 P.2d at 1154;

*Pesqueira*, 7 Ariz. App. at 480, 441 P.2d at 77.

¶29    The first two requirements are not at issue here.  The Becks contend, however, that Jason's use of the vehicle when the accident occurred was neither "for a family purpose" nor with their "express or implied permission."  The Becks argue that, "[i]f the individual 'pleasure and convenience' of the driver is a 'family purpose,' then the element of 'family purpose' is rendered meaningless."  According to the Becks, the doctrine does not apply as a matter of law because Jason was driving the vehicle for his own pleasure and convenience and in violation of their specific restrictions on its use.  We disagree.

¶30    In *Benton*, we held that the doctrine applied because, when the accident occurred, the defendant's son was driving the family vehicle "in the very business for which the [parent] kept and maintained the vehicle, viz., the pleasure and convenience of the members of [the] family."  20 Ariz. at 278, 179 P. at 968.  The doctrine does not require that the vehicle be furnished for a parental or communal errand.  *See Brown*, 140 Ariz. at 489, 682 P.2d at 1156 ("[T]he fact that the [driver/son] was using the vehicle solely for his own purpose and pleasure at the time of the accident would not automatically rule out the application of the family purpose doctrine.");  *Pesqueira*, 7 Ariz. App. at 481, 441 P.2d at 78 (holding that daughter who was involved in accident while traveling to and

17

from work was serving a family purpose). Rather, when a car is driven for the pleasure and convenience of a family member, a family purpose generally is served. *See, e.g.*, *Cohen v. Whiteman*, 43 S.E.2d 184, 187 (Ga. Ct. App. 1947) (concluding doctrine could apply when son was using family car for his own "pleasure and comfort"); *Gray v. Amos*, 869 S.W.2d 925, 927-28 (Tenn. Ct. App. 1993) (same); William L. Prosser, *The Law of Torts* 484-85 (4th ed. 1971) (noting "family purpose" includes "mere driving for the pleasure of an individual" family member).

¶31    Moreover, the doctrine does not require that a parent give permission for every possible route taken or deviation made by a family member while operating the vehicle. *See, e.g.*, *Driver v. Smith*, 339 S.W.2d 135, 143 (Tenn. Ct. App. 1959) (holding doctrine could apply when daughter, at time of accident, disobeyed parents' instruction not to drive outside city limits); *Jennings v. Campbell*, 6 N.W.2d 376, 379-80 (Neb. 1942) (holding doctrine does not require plaintiff to prove that driver of family car had owner's authority to drive at exact time and place of accident). Therefore, a deviation from the terms of consent will not necessarily relieve a head of the family from liability. *See Evans v. Caldwell*, 190 S.E. 582, 583 (Ga. 1937) (noting that when the general purpose for which family vehicle is furnished is for family member's convenience and enjoyment, with parent's express or implied permission,

18

parent's limitation on vehicle's use "to a particular destination and return . . . is not a limitation on the purpose for which the car is being used").

¶32     To hold otherwise would enable parents to immunize themselves from liability by imposing general, unrealistic, or unenforced limitations on their child's use of the vehicle. *See Driver*, 339 S.W.2d at 143 ("[I]f at the time of the accident it should be assumed that [the daughter/driver] was exceeding her authorized speed limit certainly it could not be contended that such disobedience relieved the father of liability."). "As between the owner of the vehicle and the person injured by the negligent operation thereof, it is the duty of the owner to see that his private limitations on its use are followed." *Phillips v. Dixon*, 223 S.E.2d 678, 682 (Ga. 1976).

¶33     Here, it is undisputed that the Becks maintained and furnished the vehicle for Jason's general use and that, on the night of the accident, Jason's mother permitted him to use the vehicle for certain purposes. Although the permission did not extend to transporting friends, the courts below correctly concluded that Jason's deviation from his parents' limitation on his use of the vehicle did not entitle the Becks to summary judgment on Young's family purpose doctrine claim. *See Richardson v. True*, 259 S.W.2d 70, 73 (Ky. 1953) (noting that, once having consented to use of vehicle for family purpose,

19

parent is not relieved from liability merely because family member was using vehicle for unauthorized purpose or in a forbidden manner at time of accident); *Heenan v. Perkins*, 564 P.2d 1354, 1356 (Or. 1977) (same); *Crowder v. Carroll*, 161 S.E.2d 235, 237-38 (S.C. 1968) (rejecting parent's contention that doctrine did not apply as a matter of law because at time of accident son was driving family vehicle contrary to parent's express instructions); *Gray*, 869 S.W.2d at 927-28 (same); *Kaynor v. Farline*, 72 P.3d 262, 271 (Wash. Ct. App. 2003) (same).

¶34     Based on the undisputed facts of this case,[6] we agree with the trial court and court of appeals that the doctrine applies and that Young was entitled to summary judgment on that issue. *See First-City Bank & Trust Co. v. Doggett*, 316 S.W.2d 225, 230 (Ky. 1958) (noting that when "the essential facts are not in dispute, the question really becomes one of the scope and extent of the family purpose doctrine as a rule of law, and therefore is a question of law for the court"). The Becks allowed Jason to drive the vehicle on the night in question (and thus he had the vehicle with their express permission), and he was transporting himself (which, under *Benton*, constituted a

---

[6]    The Becks stipulated in their "high/low" settlement agreement that the relevant facts "are not materially disputed" and that "[t]he issue to be determined on appeal is a purely legal issue regarding application of the family purpose doctrine to the facts of this case."

family purpose).  Accordingly, we reject the Becks' assertion that the family purpose doctrine is inapplicable as a matter of law in this case.[7]

**VI.**

¶35     For the reasons stated above, we affirm the court of appeals' opinion and the superior court's partial summary judgment in favor of Young on the family purpose doctrine's applicability.

_____
A. John Pelander, Justice

_____

[7]     We agree with the court of appeals that the doctrine is not "without limits."  *Young*, 224 Ariz. at 413 ¶ 18, 231 P.3d at 945.  We thus do not adopt a "Hell or High Water Rule," which "conclusively presume[s] that if the vehicle was originally placed in the possession of [a] bailee by another having proper authority, then, despite hell or high water, the operation of the vehicle is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated."  *Universal Underwriters Ins. Co. v. State Auto. & Cas. Underwriters*, 108 Ariz. 113, 115, 493 P.2d 495, 497 (1972).  Given the posture of this case and the arguments made, however, we do not have occasion here to consider whether the doctrine should be prospectively limited (e.g., by adopting the approach espoused in the Restatement (Second) of Agency § 238) or whether different circumstances (e.g., a dispute over whether the child had the parent's permission to use the vehicle) would present triable issues of fact.  *See, e.g.*, *Leonard*, 468 N.W.2d at 606 (finding a triable question of fact for the jury regarding whether a child was driving an automobile with her parent's express or implied permission at the time of the accident).  Nor have the Becks ever suggested that application of the doctrine to the undisputed facts could or should not be determined as a matter of law in this case.

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
W. Scott Bales, Justice


_____
Michael D. Ryan, Justice (Retired)